Charles E. Lawton, demandante y apelado, *v.* Vicente Rodríguez Rivera, demandado y apelante.

No. 3672.—*Visto:* Noviembre 20, 1925. *Resuelto:* Mayo 21, 1926.

1. Convenios *(Covenants)* — Interpretación y "Operation" — Convenios en Cuanto al Uso de Propiedad Real—Naturaleza de las Mismas en General—Restricciones Como Servidumbres.—La restricción que obliga recíprocamente a los dueños de solar por razón de ser propietarios, de sólo fabricar una casa en cada solar, participa en su esencia por la prohibición de un uso específico de la cosa ajena, de aquellas servidumbres negativas a que se refiere el artículo 540 del Código Civil.

2. Convenios *(Covenants)* — Interpretación y "Operation" — Convenios en Cuanto al Uso de Propiedad Real—Restricciones Limitando el Dominio al Uso—En General.—Limitado el dominio al uso de una finca, la restricción entre las partes debe hacerse constar expresamente, pues de otro modo, la presunción es en favor del libre uso de la propiedad.

3. Convenios *(Covenants)* — Interpretación y "Operation" — Convenios en Cuanto al Uso de Propiedad Real—Restricciones Limitando el Dominio al Uso—Su Inscripción y Efecto—Efecto Contra Tercero.—Para que la restricción que limita al uso de una finca surta efecto contra tercero, es indispensable que la restricción entre las partes contratantes se inscriba en el registro.

4. Convenios *(Covenants)* — Interpretación y "Operation" — Convenios en Cuanto al Uso de Propiedad Real—Restricciones Limitando el Dominio al Uso—Su Inscripción y Efecto—Futuros Compradores, Sucesores y Causahabientes.—Cuando existe un plan general de mejoras, exclusivo y privado para uso de futuros compradores y se impone a los compradores de solares entre otras restricciones la de edificar una sola casa en cada solar si tal restricción se inscribe en el Registro, ella obliga a futuros compradores entre sí, o sus sucesores o causahabientes.

5. Convenios *(Covenants)*—Cumplimiento o Quebrantamiento *(Breach)*—Convenios que Limitan el Dominio al Uso de Una Propiedad—Restricciones Respecto a Edificaciones.—Inscrita en el registro restricción que, obedeciendo a un plan general de urbanización, limita el dominio al uso de los solares en cuanto a solo fabricar una casa en cada solar, si subdividido un solar se fabrica una casa en la parte segregada, la fabricación de otra en la parte del solar restante viola la cláusula restrictiva, y el dueño del solar contiguo puede hacerla efectiva mediante *injunction.*

6. Injunction—Materias Sujetas a Protección y Remedio—Contratos—Convenios que Limitan el Dominio al Uso de Una Finca—Restricciones Respecto a Edificaciones.—Hay suficiente equidad para conceder un *injunction* cuando, obedeciéndose a un plan general de mejoras se han impuesto restricciones que, inscritas en el registro, obligan recíprocamente a los dueños de los solares y uno de éstos viola una de las condiciones restrictivas que viene obligado a cumplir.

7. Apelación y Error—Revisión—Discreción de la Corte Inferior—Imposición de Costas.—Cuando la temeridad de la parte a quien se condena en costas es manifiesta, el Supremo no revocará dicha condena impuéstale.

RECONSIDERACIÓN.

*Resolución* de Junio 13, 1926.

INJUNCTION—NATURALEZA Y FUNDAMENTOS EN GENERAL—FUNDAMENTOS DEL RE-
   MEDIO—OBJECIONES QUE AFECTAN EL DERECHO AL REMEDIO—DAÑO COMPARA-
   TIVO.—Cuando se interviene por *injunction* para ser efectiva cláusulas restric-
   tivas en escrituras que limitan el dominio al uso de una finca, el remedio
   (*injunction*), se concede por el incumplimiento de dichas cláusulas restric-
   tivas y no es contestación al mismo el alegar que el acto del cual el deman-
   dante se queja no le inflige ningún daño o no le reporta beneficio alguno.

SENTENCIA de *Charles E. Foote*, J. (Primer Distrito, San Juan),
   declarando con lugar la demanda. *Confirmada*.

*Chas. Hartzell* y *Daniel F. Kelly,* abogados del apelante; *Francisco
   Soto Gras,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR FRANCO SOTO, emitió la opinión del
tribunal.

Rafael Carrión y Pacheco, causante de las partes con-
tendientes en este pleito y dueño de tres parcelas de terreno
radicadas en el sitio "Machuchal," de la sección norte del
barrio de Santurce de esta ciudad, las agrupó formando una
sola finca, la que inscribió con número independiente en el
registro de la propiedad. Así agrupada la finca la convir-
tió de rústica en urbana, levantando un plano general del
terreno que dividió en 12 solares que se reparten 6 a cada
lado de una calle trazada al efecto para dar acceso a los
mismos y a cuya entrada aparecen colocadas dos mesetas ins-
cribiéndose en las mismas, ostensiblemente, el nombre de
"Carrión's Court." Los solares se enumeran del 1 al 12
y se da la cabida y colindancia de cada uno.

Bajo este plan de urbanización cuyo fin no parecía ser
otro sino interesar al público para la compra de solares, Ca-
rrión procedió a realizar su negocio y en enero 18, 1922,
vendió a George H. Joy el solar marcado con el No. 4 del
plano de urbanización con una cabida por el frente de 28
metros 59 centímetros, haciéndose inherente al convenio las
siguientes restricciones:

"C.—Que el comprador, sus herederos y sucesores se obligan en
el caso de que se decidieran fabricar en el solar adquirido, a construir

una sola casa, la cual distará veinte y cinco pies del frente de la calle trazada y que da al lado Este; y asimismo se obligan a no construir verjas o cercas en las colindancias de las fincas que adquieren a distancia menor de veinte y cinco metros de la línea de la calle.''

Posterior a esta venta, febrero 13, 1922, Carrión vendió a Charles E. Lawton, demandante en este caso, el solar No. 3, y en la escritura haciéndose mención de la agrupación y del plano de urbanización, y estableciéndose iguales restricciones que las consignadas en la venta del solar No. 4, se dice y estipula lo siguiente:

''TERCERO.—Que la expresada agrupación de la parcela arriba descrita, que se halla aún pendiente de inscripción, se practicó mediante plano levantado al efecto sobre dichos terrenos por el agrimensor titulado Don José Castro Martínez, repartido dicho terreno en solares numerados del uno al doce inclusive, dividido dicho terreno por una calle de ocho metros de ancho que lo cruza de Norte a Sur. dando frente a la cual se hallan enclavados los expresados doce solares.

 *  *  *  *  *  *  *

''TERCERA.—Es condición de esta venta que en el solar vendido el comprador o causahabiente no podrá edificar más de una residencia, la cual se construirá a una distancia de veinticinco pies de la línea frente a la calle abierta en dichos terrenos, pues es el objeto del vendedor de que todas las casas edificadas en dichos terrenos guarden la misma distancia proporcional en su frente a la calle que dan frente los demás solares del vendedor.''

Una y otra venta fueron inscritas en el registro de la propiedad, constando de las inscripciones respectivas la condición relativa a tales restricciones.

George H. Joy, por otra parte, fraccionó su solar No. 4, vendiendo una porción de 8 metros 59 centímetros a Arturo L. Carrión, la que unió el comprador al solar No. 5 de que era dueño, fabricando una casa que prácticamente queda en medio de la línea divisoria de los solares Nos. 4 y 5 del plano de urbanización original.

La otra fracción del solar No. 4 que quedó reducida a 20 metros de frente, la vendió Joy a Vicente Rodríguez Ri-

vera, quien al iniciar los trabajos de edificación de una casa en dicha fracción, dió origen a esta demanda de *injunction* en la que Lawton, dueño del solar contiguo No. 3, alega que la edificación violaba la cláusula restrictiva que limitaba la fabricación de una sola casa en el solar No. 4.

La contención más importante del apelante en contra de la sentencia apelada que declaró con lugar la demanda, es la que sostiene, en resumen, que se trata de una restricción de carácter personal entre vendedor y comprador, que no obliga a futuros compradores para hacerse efectiva por ellos entre sí y que tales restricciones no son las servidumbres que reconoce el Código Civil para lo cual siempre debe existir un predio dominante y un predio sirviente.

[1] A nuestro juicio la legislatura al adoptar el Código Civil antiguo en materia de servidumbres, sin introducir ninguna modificación o innovación en las mismas, no fué porque no se pudiera prever la nueva modalidad que representa las restricciones cuyo carácter se discute y que exigencias de urbanizaciones más modernas parecen imponer por razones de orden sanitario y de ornato o embellecimiento, sino porque el concepto de las servidumbres positivas y negativas que define el Código es tan amplio que a poco que se analicen tales restricciones no parece que sean extrañas por su naturaleza a las negativas de las que el Código en su artículo 540 prescribe como sigue:

"Art. 540. Las servidumbres son además positivas o negativas.

"Se llama positiva la servidumbre que impone al dueño del predio sirviente la obligación de dejar hacer alguna cosa o de hacerla por sí mismo, y negativa la que prohibe al dueño del predio sirviente hacer algo que le sería lícito sin la servidumbre."

Dentro del tecnicismo legal, si la servidumbre consiste en dejar hacer algo el dueño del predio sirviente (servidumbre positiva), o en prohibir a éste hacer algo que le sería lícito sin la servidumbre (servidumbre negativa), parecería lógico afirmar que las restricciones que obligan recíprocamente a cada dueño de solar, por razón de ser pro-

pietarios, de sólo fabricar una casa en cada solar, participan en su esencia por la prohibición de un uso específico de la cosa ajena, de aquellas servidumbres que consisten en no levantar más alto un edificio, *servitas non altius tollendi,* y que procedentes del derecho romano habían sido harto conocidas hasta ahora. Pero sin que sea necesario que nos detengamos a determinar con más precisión el aspecto legal cuya validez es objeto de controversia, se hace importante decir que [2] tratándose de todos modos de algo que limita el dominio al uso de una finca, tal restricción entre las partes contratantes debe hacerse constar expresamente, pues de otro modo la presunción es en favor del libre uso de la propiedad, y [3] para que surta efecto contra tercero es indispensable además su inscripción en el registro de la propiedad. Estas son dos proposiciones para examinar con vista de las circunstancias de este caso.

Los actos preliminares de Rafael Carrión y Pacheco haciendo la agrupación de fincas que inscribe bajo un número independiente en el registro; que levanta un plano general del terreno del que aparece su división en solares con sus respectivas cabidas y numerados del 1 al 12 dando frente a una calle que los divide seis a cada lado y que a su entrada coloca dos mesetas en las que inscribe el nombre de "Carrión's Court," es la demostración evidente y explícita de un plan general de mejoras, exclusivo y privado para uso y disfrute de futuros compradores. Y la intención de Rafael Carrión se confirma y manifiesta específicamente cuando vende al demandante el solar No. 3 y se refiere en la escritura al plano que fué levantado y sustancialmente a los actos preliminares que hemos descrito e impone al comprador, entre otras restricciones, la de edificar una sola casa en dicho solar No. 3. Bajo estas circunstancias el apelado en su alegato atinadamente sostiene lo siguiente:

"Sentado que nos encontramos con un plan de urbanización definido y con transmisiones mutuas al demandante y demandado por

el causante común Sr. Carrión en las cuales trasmisiones se hizo constar idéntica restricción de que en los solares adquiridos por el demandante y el Sr. Joy no podría edificarse más de una residencia, sólo falta decidir si la cláusula ha sido violada.

"Una vez inscrita en el Registro la condición restrictiva ella afectó al solar No. 4 de tal manera que las sucesivas trasmisiones y aun transformaciones de este solar siempre habrían de estar afectas a tal condición. Y esto aun en el caso de no haberse estipulado, como se estipuló, que la condición habría de afectar a los sucesores, herederos o causahabientes de los compradores. Y nosotros decimos que si en el solar No. 4 no se pudo fabricar más de una casa, en parte alguna del solar No. 4 puede existir más de una casa. Y es evidente que en la porción de 8 metros 59 centímetros existe una edificación, una estructura que será dedicada o está dedicada a habitación o residencia, bien que tal habitación o residencia no constituye por sí sola una casa y se complementa con el resto de la estructura que se extiende en los solares 5 y 6, bien que hubiera sido una casa que en su totalidad hubiera estado en la porción de 8 metros. Lo esencial es que un solo vecino, una sola familia, un solo espacio edificado constituía según la condición el solar No. 4 y ahora, si se permitiera la edificación del demandado, tendríamos dos familias, dos edificaciones y dos espacios habitados dentro del solar No. 4."

La cláusula, por otro lado, que parece aclaratoria y que se consigna en la escritura que Joy vende al apelante inspirada seguramente para poner a salvo cualquier contingencia que pudiera sobrevenir con motivo de Joy subdividir el solar No. 3, habiendo vendido la otra fracción a Arturo Carrión, más bien da más fuerza a la restricción para hacerse respetar por futuros compradores entre sí, o sus sucesores o causahabientes. La cláusula de que hablamos dice lo siguiente:

"SEXTA.—Estando presente el señor Carrión hace constar que si bien en el título adquisitivo del señor Joy se estipuló una limitación de edificar una sola casa residencia en ese solar, dicha limitación en nada afectará al derecho del comprador señor Rodríguez Rivera para la construcción de una casa residencia, por cuanto la segregación previa que se hizo de ese solar por venta al Doctor Arturo Carrión se destinó para completar un solar colindante de dicho señor."

Puede concluirse de su lectura que no pudo ser la intención de Rafael Carrión de relevar a Joy de la restricción impuesta, ni tampoco podía hacerlo. Para ello era necesario el consentimiento de Lawton, quien había comprado antes de la adquisición de Joy, inducido sin duda bajo las circunstancias del plan general de mejoras y que como consecuencia del mismo se le impuso, y convino en aceptar, la misma restricción que cumplió de su parte fabricando una sola casa residencia en su solar No. 3. Si como sostiene el apelante las restricciones se hicieron en beneficio únicamente de Rafael Carrión Pacheco, originador del plan general de urbanización, ¿cómo él no deja sin efecto la restricción sino que sólo se aventura a expresar una opinión interpretando el efecto de la cláusula restrictiva, creyendo por el contrario que no se violaba la restricción porque la segregación que se había hecho del solar No. 4 (8 metros 59 centímetros) a favor de Arturo Carrión era para completar el del No. 5? No podía deducirse de su intervención, si ese fué su objeto, que informar al apelante la existencia de restricciones que obedecían a un preconcebido plan de urbanización para fines residenciales y que la mera subdivisión de un solar, en relación con la restricción, no era motivo para que se entendiera infringida, pero prescindiendo de este punto que no es objeto de discusión, si como ocurrió más luego que Arturo Carrión fabricó en la fracción del solar No. 4 que fué primeramente segregado aunque se hiciera extendiendo la edificación que procedía del solar No. 5, hay que concluir *a fortiori* que la compra posterior por el apelante del resto del solar No. 4, intentando levantar otra casa en el mismo, constituye una violación al derecho del apelado.

Aunque el apelante cita en su apoyo diferentes casos que determinan el valor de cláusulas restrictivas de índole semejante y su efecto entre futuros compradores, la tendencia que se observa de esas autoridades y las citadas en oposición por el apelado es de darle fuerza legal entre di-

chos compradores y sus herederos o causahabientes siempre que sean razonables, obedezcan a un plan general de mejoras, consten específicamente en el título y se inscriban en el registro de la propiedad. El caso de *Glines* v. *Matta,* 19 D.P.R. 409, es la expresión de esa regla en esta jurisdicción y por él quedaron resueltas las cuestiones planteadas en el presente, entre ellas, la que alega el apelante de no haber equidad en las pretensiones del demandante para que se dictara sentencia concediendo el *injunction.* Basta referirnos a las páginas 415–16 del caso citado, donde puede verse la discusión amplia de ese extremo.

Se insiste, sin embargo, y se señala como error que el caso de Glines, *supra,* no tiene aplicación por existir diferencia en los hechos y proceder de una corporación que adoptó un acuerdo general estableciendo ciertas restricciones sobre la propiedad, que se consignó en escritura y se tomó razón en el registro, poniéndose en conocimiento (*notice*) de todos los compradores que los solares se vendían sujetos a dichas restricciones. Se alega como una consecuencia que se trata de una restricción general que se inscribió en el registro, lo cual no aparece de este caso en que la agrupación de parcelas para dividirlas en solares no contiene restricción alguna.

Una de las restricciones en aquel caso se refiere a la obligación de cada dueño de solar de dejar una parte del terreno sin fabricar siendo ella la materia en controversia y no vemos la razón para hacer distinciones por ese lado. De otro, en una corporación, como creación artificial de la ley, todos sus actos han de realizarse en su nombre corporativo por conducto de su cuerpo de directores. Estos no actúan como personas naturales y como agentes unos de otros. Proceden por acuerdos y para actuar como cuerpo corporativo tienen que reunirse llenando los requisitos que determinen sus cláusulas de incorporación y reglamentos. De ahí lo natural de tomar un acuerdo general sobre una materia como la que se trata y se inscriba en el registro en

lugar de tomarse un acuerdo para cada caso en particular. Pero asimismo resulta lógico que Rafael Carrión Pacheco como persona natural y con plena capacidad para contratar desenvolviera sus actividades por actos sucesivos, sin trabas ni requisitos que cumplir, para actuar por su propio acuerdo estableciendo las restricciones que regulaban las edificaciones en cada venta, lo que así al menos hizo expresamente al desprenderse de los solares Nos. 3 y 4. No hay motivos para la distinción.

En cuanto a las costas, no nos sentimos inclinados a su revocación. Por el registro el apelante tuvo suficiente aviso de la restricción impuesta al solar No. 4. De él también aparecía la obligación recíproca que se imponía al apelado y que había cumplido. Si como se desprende de la prueba oral él fué avisado por el demandante antes de empezar la edificación de que no podía hacerla y si no obstante empezó la fabricación, su temeridad es manifiesta.

*Por todo lo expuesto debe confirmarse la sentencia apelada.*

### RESOLUCIÓN SOBRE RECONSIDERACIÓN

El Juez Asociado Señor Franco Soto, emitió la opinión del tribunal.

El apelante solicita que se reconsidere nuestra sentencia de mayo 21, 1926, alegando para ello, en síntesis, las siguientes razones: que se ha sostenido en la opinión de esta corte que las restricciones contenidas en las escrituras otorgadas por Rafael Carrión a Joy y a Lawton se establecieron iguales restricciones, cuando en realidad no eran iguales ni uniformes para todos los solares; que se hace sostener al apelante, que las restricciones sobre edificación no son las que reconoce el Código Civil, cuando parece que no se hicieron entender en su alegato, explicando que lo sostenido en realidad fué que tales restricciones para que tengan en Puerto Rico el alcance de servidumbre, deben estar constituídas con todos los requisitos exigidos por el

Código Civil y la Ley Hipotecaria; que al discutir el caso de *Glines* v. *Matta,* 19 D.P.R. 409, esta corte parece que le dió más importancia al argumento del apelante que se refiere al acuerdo tomado en aquel caso por la junta de directores de la corporación y que no se dió la debida consideración a su principal contención, consistente en que en el caso de *Glines* concurrían requisitos que faltan por completo en el caso que nos ocupa, entre ellos, el de que en la hoja de la finca principal se inscribió una escritura pública contentiva de las restricciones uniformes que se imponían a todos los solares que fueren segregados de la finca principal; que respecto al tercer error discutido en el alegato del apelante relativo a que no hay equidad en las pretensiones del demandante para que se concediera el *injunction,* que esta corte limitándose a decir que la cuestión quedó resuelta en el caso de *Glines,* pareció entender que el apelante sostenía que el *injunction* no procedía para impedir la violación de una servidumbre, cuando su contención era que procede, como cuestión puramente legal, siempre que se viole un derecho claro, pero que como se trata de un procedimiento de equidad, la corte podía tener en cuenta que en realidad el demandante no sufría daño alguno si el *injunction* no se expidiera; y por último, que no debieron imponerse las costas.

I. En nuestra opinión de mayo 21, 1926, se copian las cláusulas pertinentes sobre restricciones contenidas en las escrituras de Carrión a Joy y de Carrión a Lawton. Las restricciones que regulan las edificaciones de fabricarse una casa en cada solar es idéntica por su tenor literal en una y en otra escritura y de ellas se tomó razón en el registro de la propiedad. A esas restricciones es que nos hemos referido y ése ha sido el objeto único de este pleito. El hecho de que en la misma escritura de Joy se dejara sin efecto la relativa a cercas y verjas y de que a nada de esto se hiciera referencia en la escritura de Lawton, era la demostración de dársele por las partes completa uniformidad a la única y esencial restricción que quedó en vigor.

II. La contención ahora del apelante de que el Código Civil reconoce como servidumbre las restricciones que regulan las edificaciones, viene a fortalecer el caso en la forma expuesta en nuestra anterior opinión. Para que veamos que no entendimos mal al apelante, copiaremos de su alegato el siguiente párrafo, que dice:

"Los únicos gravámenes o restricciones de un predio a favor de otro reconocidos en nuestro derecho civil están comprendidos entre los artículos 586–611 de nuestro Código Civil. Ninguno de estos artículos hace referencia a servidumbre alguna de la naturaleza que el demandante trata de hacer cumplir en el presente caso. Siendo ello así, entendemos que la restricción invocada debe ser interpretada estrictamente en contra de la persona que la reclama y que por lo tanto el caso de Glines vs. Matta debe asimismo interpretarse con todo rigor, aplicándolo tan sólo a otros casos en que concurran todos los requisitos necesarios para que no exista duda alguna de la existencia de la servidumbre, pues de lo contrario la aplicación de dicho caso de un modo liberal traería por resultado una modificación radical del derecho civil en materias de servidumbre que vendría a causar serios trastornos en la contratación real y hasta en el crédito territorial y sostenemos que está contra la letra, espíritu y teoría de nuestras leyes, tanto civil como hipotecaria que están basadas en la libre contratación a falta de prohibiciones explícitas."

En esta parte de la moción del apelante se alega además que para llegar a la conclusión que la restricción impuesta por Rafael Carrión al solar vendido a Joy constituye una servidumbre a favor del solar de Lawton, tomamos en consideración las fechas de las escrituras de Carrión a Joy y de Carrión a Lawton y la circunstancia de que las mismas fueron inscritas, pero que no se tuvo en cuenta que la escritura a Joy, aunque anterior en fecha a la de Lawton, fué inscrita más de dos meses después.

Como lo que perjudica al apelante es su conocimiento de la restricción impuesta dada la evidencia en este caso, el hecho de que la escritura de Carrión a Joy se inscribiera con posterioridad a la de Lawton nada significa en relación con el apelante. De todos modos Joy inscribió en abril 27,

1922, y el apelante le compró en abril 2, 1924, y ya el registro desde aquella fecha le daba suficiente aviso de la servidumbre. Además, en el contrato mismo de compra del apelante a Joy, en el que intervino Rafael Carrión, expresando una opinión sin aventurarse a dejar sin efecto la servidumbre, punto que dejamos suficientemente debatido en nuestra primera opinión, dicho apelante supo de igual modo de la restricción impuesta al solar que compraba.

No era tampoco punto esencial a considerar en este caso la inscripción de las restricciones en la hoja de la finca principal agrupada para diferenciarlo del caso de *Glines*. Esto se trata asimismo en aquella opinión al referirnos a dicho caso. Por la manera de actuar una corporación se explicaba que en aquel caso se tomara un acuerdo general sobre las restricciones que regulaban las edificaciones en los solares y se inscribiera en la hoja de la finca principal. Aquí se estableció la restricción al vender Carrión los solares números 3 y 4 y no sólo fueron inscritos en el registro sino que tanto en la inscripción de Lawton como en la de Joy al empezarse a describir cada solar la descripción del registro los refiere al plano de urbanización de la finca principal, haciendo expresa mención.

III. Por el tercer error el apelante sostuvo que no había equidad en las pretensiones del demandante para que se concediera el *injunction*. Se alega ahora que parece que esta corte entendió que el apelante sostenía que el *injunction* no procedía para impedir la violación de una servidumbre, cuando en realidad su contención es que si bien procede, la corte podía tener en cuenta que el demandante no sufría daño alguno si el *injunction* no se expidiera. En este punto puede verse el párrafo pertinente de nuestra opinión y nada parece sostener la conclusión del apelante. El párrafo dice:

"Aunque el apelante cita en su apoyo diferentes casos que determinan el valor de cláusulas restrictivas de índole semejante y su efecto entre futuros compradores, la tendencia que se observa de

esas autoridades y las citadas en oposición por el apelado es de darle fuerza legal entre dichos compradores y sus herederos o causahabientes siempre que sean razonables, obedezcan a un plan general de mejoras, consten específicamente en el título y se inscriban en el Registro de la Propiedad. El caso de Glines v. Matta, 19 D. P.R. 409, es la expresión de esa regla en esta jurisdicción y por él quedaron resueltas las cuestiones planteadas en el presente, entre ellas, la que alega el apelante de no haber equidad en las pretensiones del demandante para que se dictara sentencia concediendo el *injunction*. Basta referirnos a las páginas 415-16 del caso citado, donde puede verse la discusión amplia de ese extremo.''

La contención del apelante en su alegato era que la cuestión envuelta es puramente de equidad puesto que en la demanda se invoca un remedio de equidad, como es el injunction y que es aplicable en toda su extensión la doctrina jurídica de que no debe dictarse una sentencia perjudicando materialmente a una parte sin que la otra resulte beneficiada en igual proporción, debiéndose considerar por tanto, la doctrina del daño comparativo (*comparative injury*.)

En relación con la teoría relativa al daño, esta Corte Suprema en dicho caso de Glines, *supra,* pág. 416, hizo con aprobación la siguiente cita:

''En el artículo 1342 de la Jurisprudencia sobre Equidad de Pomeroy, aparece lo siguiente, que es de aplicación a este caso:

'' 'Artículo 1342. *Condiciones restrictivas que crean servidumbres en equidad.*—Esta doctrina ha sido ya examinada y se ha mostrado que las cláusulas restrictivas contenidas en escrituras, arrendamientos y convenios que limitan el uso del terreno de modo específico, o que determinan un uso particular que crea servidumbres en equidad sobre la finca, podrán ser ejercitadas específicamente en equidad, por medio de un *injunction* no solamente entre las partes directamente interesadas, sino también entre los subsiguientes compradores que tengan conocimiento del caso, aun cuando las restricciones no sean de la clase que técnicamente van unidas a la propiedad. Por supuesto, el *injunction* en esta clase de casos se concede generalmente por el incumplimiento de la cláusula restrictiva. La cuantía de los daños y perjuicios y hasta el hecho de que el demandante haya sufrido perjuicios pecuniarios son cuestiones completa-

mente inmateriales.   Uno de los modernos jueces más competentes de equidad ha dicho: ''Ha quedado bien establecido por las autoridades, que hay suficiente causa que justifique a la corte en su intervención, si ha habido una infracción de las condiciones.   No es a la corte, sino a los demandantes a quienes incumbe estimar la cuantía de los daños que se originan del perjuicio causado a los mismos. Desde el momento en que la corte ve que ha existido un incumplimiento de las condiciones restrictivas, eso constituye un perjuicio, y la corte no tiene derecho a estimarlo, ni a negar el derecho del demandante al cumplimiento específico de su contrato, aunque su remedio es aquel a que se ha hecho referencia o sea, el *injunction.*' ''

El daño, por consiguiente, no es un elemento que fuera indispensable comparar y pesar en el caso.   Se ha sostenido en consonancia con nuestra ley de *injunctions* y la doctrina sentada en el caso de *Glines* que el mero hecho de que se falte al contrato es suficiente fundamento para la intervención de las cortes por *injunction;* el comprador tiene derecho a gozar y disfrutar de la propiedad en la forma y modo estipulado y no es contestación decir que el acto del cual un demandante se queja, no le inflige ningún daño o no le reportará beneficio alguno.

''La regla sobre esta materia, generalmente adoptada y seguida por las cortes de este país, está, según creemos, correctamente expresada en Kerr sobre *Injunctions,* 2da. edición, p. 356: 'Si el derecho en ley bajo el convenio está claramente establecido y la violación es clara, y el convenio es de tal naturaleza que puede, consistentemente con las reglas y principios de la corte, obligarse específicamente a su cumplimiento, la corte, excepto en muy excepcionales circunstancias, no tomará en consideración en la vista el daño comparativo a las partes por la concesión o negativa del *injunction.* . . . El mero hecho de que haya habido una violación de convenio es fundamento suficiente para la intervención de la corte mediante *injunction.*   La persona en cuyo favor se ha hecho un convenio tiene derecho al disfrute material de la propiedad *modo et forma* según se haya estipulado en su favor.   Y no es bastante contestación decir que el acto objetado no producirá daño alguno al demandante ni siquiera que ha de ser beneficioso para él.   Toca al demandante juzgar si el convenio ha de ser preservado en tanto en cuanto a él se refiere o si ha de permitir que el mismo sea violado.   No es necesario que demues-

tre que se ha producido daño alguno.    Quedando establecido que los actos del demandado constituyen una violación del contrato celebrado por él, la corte protegerá al demandante en el disfrute de su derecho por él comprado.' "    28 L. R. A. (N. S.) págs. 721, 722.

IV. Respecto a las costas, el razonamiento del apelante no es de tal modo persuasivo ni menos convincente que nos mueva a una ulterior consideración en ese extremo.

No dejaremos de aclarar que si bien en el primer párrafo, página 7, de nuestra opinión de mayo 21, 1926, decíamos que Lawton había comprado antes de la adquisición de Joy, queríamos significar la adquisición procedente de Joy hecha por el apelante y en tal sentido es que debió entenderse nuestra conclusión, quedando aclarada si es necesario en ese extremo.

*Por todo lo expuesto, la moción sobre reconsideración debe declararse sin lugar.*