*492 TEXTO COMPLETO DE LA SENTENCIA
La Dra. Aida González Bradley solicitó la revocación de una resolución de la Junta de Apelaciones sobre Construcciones y Lotificaciones (en adelante la Junta). Dicho recurso fue identificado con el número KLRA-2002-00230. En la resolución recurrida, la Junta revocó una determinación de la Administración de Reglamentos y Permisos (en adelante A.R.P.E.), mediante la cual se denegó una solicitud de legalización de unas construcciones presentada por la señora Lucía Mayo. A.R.P.E. también compareció el 16 de abril de 2002 y solicitó la revocación de la resolución de la Junta. Al escrito de revisión presentado por A.R.P.E. se le asignó el número KLRA-2002-00238.
Por ambos recursos referirse al mismo asunto, el 6 de mayo de 2002 se ordenó su consolidación. Mediante resolución de 16 de octubre de 2002 se autorizó la regrabación de los procedimientos y se ordenó la producción de una exposición narrativa de la prueba. El 20 de mayo de 2005, luego de numerosos incidentes procesales relacionados con la referida regrabación y exposición de la prueba, la Junta compareció y sometió una exposición narrativa que aceptamos el 27 mayo de 2005. Posteriormente compareció la paite recurrida.
Habiendo examinado los escritos presentados por las partes así como la prueba que obra en el expediente, resolvemos revocar la resolución de la Junta.
I
El 20 de febrero de 1996, la señora Mayo presentó ante A.R.P.E. una solicitud de "Consulta sobre Conformidad con el Reglamento de Zonificación" para la legalización de una segunda planta y una ampliación en la primera planta en una residencia ubicada en la Calle Fernando I, Núm. 362, Urbanización Huyke en San Juan. Véase Apéndice a KLRA-2002-00238, pág. 18. Se solicitaron variaciones en los patios izquierdo, derecho y posterior. La estructura para la cual se solicitaba la consulta se encuentra localizada en un Distrito de Clasificación Residencial Tres (R-3).
El caso ante A.R.P.E. fue identificado como 96-17-A-794-SPA. El 4 de octubre de 1996, A.R.P.E. emitió un "Informe sobre Acuerdo Adoptado por el Director de la Oficina Regional de San Juan", mediante el cual denegó la consulta solicitada por entender que la misma no se ajustaba a la reglamentación vigente. Véase Apéndice a KLRA-2002-00238, pág. 58. En el Informe se incluye, como fundamentos para la denegación, lo siguiente:

*493
“La construcción invade los patios laterales requeridos de dos metros (6’-6”), cada uno y cuya suma sea no menor de cinco metros (16’-4”) y el patio posterior requerido de tres metros (9’-10”) en violación a las disposiciones del Tópico 6, Secciones 13.09 y 13.10 del Reglamento de Planificación Número 4 (Reglamento de Zonificación) vigente.

La construcción excede el área de ocupación permitida del 50% del área del solar, en violación a las disposiciones del Tópico 6, Sección 13.06 del citado Reglamento.

La construcción excede el área bruta de piso máxima permitida del 100% del área del solar en violación a las Disposiciones del Tópico 6, Sección 13.07 del Reglamento de Zonificación vigente.

Se proponen varios cuartos habitables sin iluminación y ventilación natural adecuada, en violación a las disposiciones del Artículo V-A-2.0 del Reglamento de Planificación Número 7 (Reglamento de Edificación) vigente.

Se construyó en material combustible (madera) a una distancia menor de 3’-O” de la colindancia del solar, en violación a las disposiciones del Artículo II-K-3.0 del Reglamento de Edificación vigente.

Se cerró la marquesina en su parte posterior, en violación a las disposiciones del Tópico 7, Sección 77.05 del Reglamento de Zonificación vigente. ”

Inconforme con la determinación de A.R.P.E., la señora Mayo presentó un escrito de apelación ante la Junta el 29 de noviembre de 1996. Véase Apéndice a KLRA-2002-00238, pág. 74. Alegó que las variaciones solicitadas eran necesarias, que no afectarían la infraestructura, la urbanización en donde ésta ubica, ni la tranquilidad y la seguridad de los vecinos. En cuanto a la construcción en material combustible, la señora Mayo indicó que se encontraba en la mejor disposición de cumplir con cualquier requisito que A.R.P.E. entendiera necesario, incluyendo remover el referido material.
La Dra. González Bradley, vecina inmediata de la señora Mayo, presentó ante la Junta una solicitud de intervención y se opuso a la apelación. Véase Apéndice a KLRA-2002-00230, pág. 18. También solicitó intervención y se opuso a la apelación la Asociación Pro-Bienestar Vecinos Urbanización Huyke, Inc. (en adelante la Asociación). Véase Apéndice a KLRA-2002-00230, pág. 14.
La Junta celebró la correspondiente vista administrativa durante los días 20 de septiembre de 2000, 6 de abril de 2001 y 29 de mayo de 2001. La prueba testifical de la señora Mayo consistió en su propio testimonio, en las declaraciones del Presidente de la Asociación, señor Emilio E. Huyke, Jr., en las de su perito, el Ing. José A. Ortiz, y en las del señor Fidel Alcántara, testigo de refutación. La prueba testifical de la parte interventora, Dra. Gonzáles Bradley, consistió en sus propias declaraciones. Véase Exposición Narrativa, pág. 1. Las partes sometieron, además, fotos y documentos.
El 15 de marzo de 2002, la Junta emitió una resolución revocando la determinación de A.R.P.E. y autorizando la solicitud de la señora Mayo. Véase Apéndice a KLRA-2002-00230, pág. 108. Señaló la Junta:

“La Sección 13.06 del Reglamento de Planificación Núm. 4 dispone sobre el área de ocupación en distritos R-3, que no se excederá del cincuenta (50%) del área del solar. Este caso se excede el cincuenta por ciento (50%) del área del solar al tener dos (2) plantas y ocupar los patios laterales. Sin embargo, tanto la propiedad de la interventora como la del lateral izquierdo tienen segundas plantas. Más aún, la de la interventora tiene un accesorio.

La Sección 13.07 del Reglamento de Planificación Número 4 dispone sobre el área bruta del piso que no 
*494
excederá del cien por ciento (100%) del área del solar. La propiedad en cuestión con la construcción a legalizar excede el 100% del área bruta del piso.

La Sección 13.09 del Reglamento de Planificación Núm. 4 dispone sobre los patios laterales en distritos R-3, lo siguiente: "Se requerirán dos (2) patios laterales, cada uno con un ancho no menor de dos (2) metros y cuya suma no será menor de cinco (5) metros".'”

La construcción en este caso invade los patios laterales requeridos, tanto hacia el lateral derecho, como en el lateral izquierdo.
La Sección 67.05 del Reglamento de Planificación Número 4, antes Sección 77.05, dispone sobre el cerramiento de la parte posterior de una marquesina, lo siguiente: "La parte posterior de una marquesina podrá cerrarse: con portones de rejas o alambre escalonado o con un paño de bloques ornamentales; o con un ventanal; o con una jardinera, un 'closet' o un muro de hormigón; se proveerá una salida o abertura de dimensiones no menores de cuarenta (40) pulgadas de ancho por ochenta (80) pulgadas de alto, que permita el libre acceso a la parte posterior del solar, en la cual podrá instalarse un portón de rejas o alambre, o una puerta...". Esta área no afecta a los vecinos colindantes.
En lo que respecta al material combustible, lo que limita el Reglamento, es respecto a las paredes no a los techos. El techo en madera en este caso es de una terraza en segunda planta hacia el lateral izquierdo, proponen un muro de 44 pulgadas de alto a cinco (5) pies de la colindancia. Para este caso se solicitaron las correspondientes variaciones.
La Sección 83.00 y siguientes del Reglamento de Planificación Número 4 dispone sobre Otras Variaciones: "83.01 - Disposición General - La Junta, la ARPE o el Municipio Autónomo, según corresponda, podrá autorizar otras variaciones conforme se indica en esta Sección. 83.02; - Propósito — El propósito de estas variaciones será evitar que la aplicación literal de los requerimientos de este Reglamento resultaren en una confiscación del disfrute de la propiedad; 83.03 - Iniciativa - Toda variación deberá ser solicitada por el dueño, o su representante autorizado, de la propiedad para la cual solicita la misma, utilizando el formulario que se designe para tales propósitos señalando motivos, fundamentos y razones en apoyo de su solicitud".
Somos de opinión que la magnitud de las variaciones solicitadas se justifica para viabilizar un uso residencial permitido. Las alternativas expresadas por el perito satisfacen elementos reglamentarios. Más aún, existe un patrón de construcciones invadiendo patios en el sector, incluyendo los solares vecinos.
Por estar en desacuerdo con la determinación de la Junta, la Dra. González Bradley y A.R.P.E. recurren ante nos. La Dra. González Bradley señala, en síntesis, que la Junta erró al validar unas construcciones en contravención a las restricciones establecidas en una servidumbre en equidad y al adoptar como determinaciones de hechos declaraciones de testigos no sostenidas por la prueba documental presentada. Por su parte, A.R.P.E. sostiene que la Junta erró al conceder las variaciones solicitadas, las cuales, a su juicio, eran excesivas y contrarias a la reglamentación vigente, al no atemperar sus determinaciones de hechos y conclusiones de derecho al contenido del expediente administrativo y al otorgar variaciones que no fueron previamente solicitadas ante A. R.P.E.
Comencemos por examinar algunos principios jurídicos aplicables a la controversia ante nuestra consideración.
II
A. La Revisión Judicial de las Determinaciones Administrativas.
*495 Es norma reiterada en nuestro ordenamiento jurídico que las conclusiones e interpretaciones de los organismos y agencias administrativas merecen gran respeto y consideración judicial, y sus decisiones se presumen correctas. Castillo v. Depto. del Trabajo, 152 D.P.R. 91, 97 (2000); Costa, Piovanetti v. Caguas Expressway, 149 D.P.R. 881, 889 (1999); Asoc. Médica de P.R. v. Cruz Azul, 118 D.P.R. 669, 978 (1987).
Claro está, esta norma de deferencia judicial cede cuando el foro administrativo ha errado al aplicar la ley, o cuando la determinación de la agencia resulta irrazonable o conduce a la comisión de injusticias. Castillo v. Depto. del Trabajo, supra, pág. 97. Costa, Piovanetti v. Caguas Expressway, supra, pág. 889; Com. Seg. P.R. v. Antilles Ins. Co., 145 D.P.R. 226, 233-234 (1998); Calderón v. Adm. Sistemas de Retiro, 129 D.P.R. 1020, 1042 (1992).
La intervención judicial con las actuaciones administrativas, entonces, ha de centrase en tres aspectos principales: (1) el remedio concedido; (2) las determinaciones de hechos; y (3) las conclusiones de derecho de la agencia. P.R.T.C. v. J. Reg. Tel. de P.R., 151 D.P.R. 269, 281 (2000).
En cuanto a las determinaciones de hechos, la revisión judicial debe guiarse por el criterio de "evidencia sustancial". Esto es, los tribunales no intervendrán con las determinaciones de hechos de una agencia administrativa si las mismas descansan en evidencia contenida en el expediente administrativo que una mente razonable pueda aceptar como adecuada para sostener una conclusión. Ramírez v. Depto. de Salud, 147 D.P.R. 901, 905 (1999); 3 L.P.R.A. see. 2175. El propósito de esta norma es "evitar la sustitución del criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor". Reyes Salcedo v. Policía de P.R., 143 D.P.R. 85, 95 (1997).
Nuestro más alto foro ha expresado que la parte afectada que intenta convencer al Tribunal de que la evidencia en que una agencia administrativa basó sus determinaciones de hechos no debe ser considerada como evidencia sustancial, viene obligada a demostrar que existe otra prueba en el récord que menoscaba o reduce el valor probatorio de la evidencia impugnada, hasta el punto que sea forzoso concluir que la determinación de la agencia fue irrazonable. Asoc. Vec. H. San Jorge v. U. Med. Corp, supra; Misión Ind. de P.R. v. J.P., 146 D.P.R. 64 (1998); Metropolitana S.E. v. A.R.P.E., 138 D.P.R. 200 (1995). A tenor con esa concepción, las determinaciones de hechos de una agencia serán respetadas si descansan en una base racional, aun si el tribunal hubiese preferido que se llegase a otra conclusión. Demetrio Fernández, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed., Colombia, Editorial Forum, 2001, pág. 543.
La revisión judicial de las decisiones administrativas está delimitada, además, por lo incluido en el récord o expediente administrativo. Así lo establece la L.P.A.U. disponiendo que "el expediente de la agencia constituirá la base exclusiva para la acción de la agencia en un procedimiento adjudicativo y para la revisión judicial ulterior". 3 L.P.R.A. see. 2168. En ese sentido, los Tribunales están impedidos de intervenir con las determinaciones de hechos de una agencia administrativa de éstas hallarse fundamentadas en prueba que surge del expediente.
Las conclusiones de derecho, por otro lado, pueden ser revisadas por el tribunal en todos sus aspectos. P.R.T. C. v. J. Reg. Tel. de P.R., supra, pág. 282; 3 L.P.R.A. see. 2175. Esto no significa que los tribunales puedan descartar libremente las conclusiones e interpretaciones de la agencia administrativa. Los tribunales deben brindar deferencia a las interpretaciones que las agencias efectúan con relación a la ley que administran, pues se presume que la agencia posee un conocimiento especializado en los asuntos que le fueron encomendados. Reyes Salcedo v. Policía de P.R., supra, págs. 109-110.
En casos marginales o dudosos, la interpretación de un estatuto por una agencia encargada de velar por su cumplimiento merece deferencia sustancial, aun cuando esa interpretación no sea la única razonable. De Jesús v. Dpto. de Servicios Sociales, 123 D.P.R. 407, 418 (1989).
*496 B. Disposiciones Reglamentarias Aplicables a la Presente Controversia.
La señora Lucía Mayo presentó ante A.R.P.E. su solicitud de "Consulta sobre Conformidad con el Reglamento de Zonificación" el 20 de febrero de 1996. En ese momento estaba vigente el Reglamento de Zonificación de Puerto Rico (Reglamento de Planificación Núm. 4, #4844) de 16 de septiembre de 1992. 
El Reglamento reconoce la facultad de. A.R.P.E. y de la Junta de Planificación para conceder variaciones. Se establecen dos tipos de variaciones: la "variación en uso" (Sección 98.05) y "otras variaciones" (Sección 98.06). La variación en el uso es una autorización para utilizar una propiedad de una manera prohibida y que sólo se concede, vía excepción, para evitar perjuicios a una propiedad cuando se pruebe que debido a circunstancias extraordinarias, la aplicación rígida de los requisitos reglamentarios equivaldría a una confiscación de la propiedad. Mun. de San Juan v. J.C.A., 152 D.P.R. 673, 714 (2000). Las otras variaciones no van dirigidas a alterar el uso, sino a eximir al propietario de alguno de los requisitos de zonificación para "asegurar la viabilidad del uso permitido". Asoc. Res. Park Side, Inc. v. J. P. [I], 139 D.P.R. 349, 356 (1995). Dispone el referido Reglamento:
“98.05 - Variaciones en Uso - La Junta [de Planificación] o la Administración cada cual en su ámbito jurisdiccional, podrá establecer variaciones en uso cuando se pueda establecer que ninguno de los usos que están permitidos en el distrito es factible en la propiedad desde el punto de vista físico o económico. Se tomará en consideración, entre otros, lo siguiente:

1. El costo de adaptar la propiedad a los usos permitidos debido a disposiciones de éste u otros reglamentos y el beneficio que se derivaría una vez adaptada ésta para los usos permitidos.

2. Las razones por las cuales ningún uso permisible es factible en la propiedad sin la variación deben ser únicas a la misma y no una característica general del distrito o del sector del distrito donde ubica. No podrán haber sido causados por el dueño.

3. El uso para el cual se solicita la variación a las disposiciones reglamentarias es compatible con los propósitos del distrito y con el vecindario o comunidad en que ubica.

4. La variación solicitada no afecta adversamente, entre otros, los siguientes factores: (a) la disponibilidad de infraestructura; (b) el contexto en el que ubica; (c) el ambiente de la calle; (d) la seguridad y tranquilidad de los vecinos.

5. El uso propuesto beneficia el vecindario...

98.06 - Otras Variaciones - La Junta [de Planificación] o la Administración, cada una en su ámbito jurisdiccional, podrá autorizar variaciones a los requisitos establecidos en este Reglamente para los usos que tolera el distrito. Se tomará en consideración, entre otros, los siguientes factores:

1. La magnitud de la variación es la necesaria para asegurar la viabilidad del uso permitido y no es viable considerar otras alternativas para salvar el problema presentado.

2. La variación solicitada no afectará adversamente, entre otros, los siguientes factores: (a) la disponibilidad de la infraestructura; (b) el contexto en que ubica; (c) el ambiente de la calle; (d) la seguridad y tranquilidad de los vecinos.

3. Se logra un desarrollo urbano más compacto.

*497
4. La densidad o intensidad solicitada no lleva a convertir el distrito en otro.

5. La variación solicitada es condona con los propósitos de la disposición reglamentaria que se solicita sea modificada, así como con la política pública... ”.

En el presente caso, la Junta autorizó la solicitud de la señora Mayo al amparo de la Sección 98.06 (Otras Variaciones). Nuestro Tribunal Supremo ha señalado que, como regla general, las variaciones a los requisitos de zonificación no se favorecen y deben utilizarse selectivamente en aquellas circunstancias en que un propietario demuestre que las restricciones le causan un daño particular que no comparte con otros. A.R.P.E. v. J.A.C.L., 124 D.P.R. 858, 862 (1989).
Por eso, se ha señalado, debe descartarse una variación cuando no haya prueba de que la situación del dueño sea singular y distinta a la de sus colindantes. A.R.P.E. v. J.A.C.L., supra, pág. 862. Citando a 3 Yokley, Zoning Law and Practice Sec. 21-6, págs. 297-298 (4ta ed. 1979). Solamente se deben conferir variaciones en circunstancias extraordinarias y para evitar perjuicios a la propiedad. Mun. de San Juan v. J.C.A., supra, pág. 714; T-JAC, Inc. v. Caguas Centrum Limited, 148 D.P.R. 70 (1999).
De otra parte, el 18 de mayo de 1969, la Junta de Planificación adoptó el Reglamento de Edificación (Reglamento de Planificación, Núm. 7, #1261). El Reglamento 7, supra, fue adoptado a los fines de fomentar, asegurar y proteger en la mejor forma posible "la seguridad, salud, comodidad y bienestar común, mediante requisitos que garanticen en los edificios y estructuras la solidez estructural, estabilidad, salubridad, luz y ventilación adecuadas, y la protección de la propiedad contra incendios y otros riesgos incidentales" a la construcción y uso de los mismos. Reglamento 7, supra, Art. I-A-2.0.
Posteriormente, el 31 de diciembre de 1998, entró en vigor el Reglamento de Emergencia para adoptar el "Uniform Building Code". Dicho Reglamento anuló el antiguo Reglamento 7 y lo sustituyó por el "Uniform Building Code", Ed. 1997. En su Sección 6, el Reglamento de Emergencia, supra, dispone que su vigencia será prospectiva.
C. A.R.P.E. y la Junta de Apelaciones sobre Construcciones y Lotificaciones.
A.R.P.E. es la agencia administrativa investida con la facultad de aplicar y velar por el cumplimiento de las leyes y reglamentos de planificación. Asoc. C.D. Octubre v. J.A.C.L., 116 D.P.R. 326, 331 (1985). La Ley Orgánica de A.R.P.E., Ley 76 del 24 de junio de 1975, según enmendada, 23 L.P.R.A. sec. 71 et seq., creó la Junta de Apelaciones sobre Construcciones y Lotificaciones.
La Ley 76, supra, establece que la Junta de Apelaciones tendrá facultad para entender exclusivamente en aquellos casos en que una parte se encuentra directamente interesada o afectada por actuaciones, determinaciones o resoluciones de A.R.P.E., con relación a "permisos de construcción y de uso de edificios, permiso de uso de solares...[y] casos donde se solicite la dispensa del cumplimiento de requisitos de un Reglamento de Planificación mediante una concesión o autorización directa". 23 L.P.R.A. sec. 72(c). Señala, además, la Ley 76, supra, que la facultad de la Junta para entender en aquellos casos decididos en A.R.P.E. se limita a las decisiones emitidas al amparo de los Reglamentos de Zonificación, Lotificaciones Simples, Lotificación y Edificación de Facilidades Vecinales, Reglamentos sobre Control de Edificaciones y Desarrollo de Terrenos en Zonas Susceptibles a Inundaciones y de reglamentos de emergencia. 23 L.P.R.A. sec. 72(c).
La Junta tiene, además, la facultad de decretar a nivel apelativo cualquier orden, requerimiento, resolución o determinación que, a su juicio, deba dictarse: (a) por motivo de pejjuicios ocasionados por circunstancias especiales cuando la resolución de la cual se apela resulta en una prohibición o restricción irrazonable del derecho del apelante al disfrute de su propiedad; (b) por denegaciones viciosas para emitir los permisos necesarios; (c) o *498 por cualquiera otra razón autorizada en los Reglamentos de Planificación y de A.R.P.E. 23 L.P.R.A. sec. 72(c). La Ley 76, supra, además, le concede a la Junta los mismos poderes del funcionario u organismo de cuya actuación se apela. 23 L.P.R.A. sec. 72(c); Junta de Planificación v. J.A.C.L, 109 D.P.R. 210, 218 (1979).
Nuestro Tribunal Supremo ha resuelto que, como parte de su función revisora, la Junta puede recibir toda la prueba que resulte necesaria para adjudicar un caso, aun prueba que no tuvo ante sí el funcionario con jurisdicción original en el asunto. Junta de Planificación v. J.A.C.L., supra, pág. 216.
D. Las Servidumbres en Equidad.
La figura jurídica conocida como servidumbre en equidad proviene del derecho angloamericano y fue reconocida en nuestro ordenamiento jurídico a inicios del siglo XX en Glines v. Matta, 19 D.P.R. 409 (1913). Como señala el Tribunal Supremo de Puerto Rico, esta figura ha ido evolucionando en el ordenamiento jurídico puertorriqueño y tiene hoy día sustantividad propia. Res. Parkville v. Díaz, Palou, 159 D.P.R. _, 2003 J.T.S. 73, pág. 956.
En términos generales, una servidumbre en equidad consiste de unas restricciones y condiciones que limitan el uso de terrenos, que operan a beneficio de los presentes y futuros propietarios, mediante las cuales se imponen cargas o gravámenes especiales, como parte de un plan general para el desarrollo y preservación de una urbanización residencial. Res. Parkville v. Díaz, Palou, supra, pág. 956; Colón v. San Patricio Corporation, 81 D.P.R. 242, 250 (1959).
Las servidumbres en equidad constituyen cargas o gravámenes reales, por lo que crean derechos reales inscribibles en el Registro de la Propiedad, y una vez inscritas, son oponibles erga omnes. Asoc. Vec. Urb Huyke v. Bco. Santander, 157 D.P.R. _, 2003 J.T.S. 1461; Asoc. V. Villa Caparra v. Iglesia Católica, 117 D.P.R. 346, 353 (1986). Para su validez y eficacia se requiere que las limitaciones sean razonables, que se establezcan como parte de un plan general de mejoras, y que consten de forma específica en el título y se inscriban en el Registro de la Propiedad. Asoc. V. Villa Caparra v. Iglesia Católica, supra, pág. 352; Carrillo Norat v. Camejo, 107 D.P.R. 137 (1978); Lawton v. Rodríguez Rivera, 35 D.P.R. 487, 494 (1926).
Para hacer efectivos sus derechos e impedir las violaciones a las limitaciones impuestas, los dueños de predios sujetos a servidumbres en equidad tienen disponibles el recurso de injunction. Res. Parkville v. Díaz, Palou, supra, pág. 956; Asoc. V. Villa Caparra v. Iglesia Católica, págs. 353-354. Contra tal recurso, un demandado puede oponer todas las defensas que le otorguen los principios de equidad, a saber: (1) consentimiento (acquiescence); (2) conciencia impura (unclean hands)', (3) incuria (laches)', y (4) impedimento (estoppel). Res. Parkville v. Díaz, Palou, supra, pág. 956; Asoc. V. Villa Caparra v. Iglesia Católica, supra, págs. 353-354. Además, puede un demandado plantear como defensa que la servidumbre se ha extinguido o que ha sido modificada. Asoc. V. Villa Caparra v. Iglesia Católica, supra, págs. 354-355.
III
Comencemos por examinar el planteamiento de la Dra. González Bradley relacionado a la servidumbre en equidad que grava la propiedad en cuestión. Indica la Dra. González Bradley que la Junta erró al validar unas construcciones contrarias a la servidumbre en equidad que grava a la Urbanización Huyke. La Dra. González Bradley se limita a señalar que la señora Mayo interesa utilizar la estructura objeto de este pleito para fines comerciales, en violación a la servidumbre en equidad establecida en la Escritura 65 de 9 de septiembíe de 1946. Véase Apéndice a KLRA-2002-00230, pág. 72.
El planteamiento resulta improcedente. La solicitud sobre la cual A.R.P.E. y la Junta pasaron juicio se refería, exclusivamente, a la legalización de unas construcciones en una estructura residencial. Es sobre esa determinación que ejerceremos nuestra función revisora. La compatibilidad entre el uso que la señora Mayo alegadamente le dé *499 a su propiedad y la servidumbre en equidad que grava la misma (la cual, según se desprende de la escritura que obra en el expediente prohíbe que las residencias se utilicen para fines comerciales) no es un asunto a dilucidar en primera instancia ante este tribunal.
De otra parte, tanto A.R.P.E. como la Dra. González Bradley sostienen que las variaciones solicitadas por la señora Mayo son excesivas y contrarias al Reglamento Núm. 4, supra. En particular, señala A.R.P.E. que en el presente caso no se justificaba eximir a la señora Mayo de varias disposiciones reglamentarias, pues estaban ausentes las "circunstancias extraordinarias" requeridas por la jurisprudencia. Véase por ejemplo Mun. de San Juan v. J.C.A., supra, pág. 714. Tiene razón A.R.P.E.
Como vimos anteriormente, en el presente caso, la Junta autorizó la solicitud de la señora Mayo al amparo de la Sección 98.06 (Otras Variaciones). Las variaciones concedidas en virtud de esta sección no suponen alterar el uso del inmueble en cuestión, sino eximir al propietario de alguno de los requisitos de planificación para asegurar la viabilidad del uso permitido.
No existe controversia alguna en cuanto a que las construcciones realizadas por la señora Mayo violan varias disposiciones reglamentarias. Así se desprende de la resolución de A.R.P.E. y de la Junta y del testimonio del propio perito de la señora Mayo. El asunto ante la consideración de la Junta era si, ante esas violaciones, se debía eximir a la señora Mayo de cumplir con varios requisitos reglamentarios. La Junta concluyó que sí, pero no incluyó fundamento alguno que apoyara su determinación. Su resolución se limita a enumerar las violaciones — ya señaladas por A.R.P.E.— en que incurrió la señora Mayo, para luego concluir que las variaciones solicitadas se justificaban para viabilizar un uso residencial permitido y que existía un patrón de violaciones similares en el área.
La Junta no explicó cuáles eran las circunstancias extraordinarias que la señora Mayo no compartía con los demás colindantes, requisito esencial para la concesión de una variación. Mun. de San Juan v. J.C.A., supra, pág. 714. Como se ha señalado, debe descartarse una variación cuando no haya prueba de que la situación del dueño sea singular y distinta a la de sus colindantes. A.R.P.E. v. J.A.C.L., supra, pág. 862. Entendemos que en el presente caso dichas circunstancias no existen y que cualquier "circunstanciaparticular" la creó la propia señora Mayo al realizar construcciones prohibidas por los reglamentos aplicables. De hecho, la propia señora Mayo, en su comparecencia ante este tribunal, indicó que su caso "no es singular ni distinto a la (sic) de los colindantes como quedó demostrado por la recurrida". Véase "Alegato de la Recurrida", pág. 25. Véase, además, la pág. 22 del mismo documento.
La Junta tampoco expresó cómo la no autorización del proyecto de legalización solicitado constituiría una confiscación del disfrute de la propiedad de la señora Mayo, ni como la violación de varios requisitos reglamentarios, como lo es la construcción de varios cuartos habitables sin ventilación ni luz natural sirve para viabilizar "el uso residencial permitido" En fin, la resolución de la Junta no discute fundamento alguno que justifique su decisión de dejar sin efecto la determinación de un organismo con conocimiento especializado como lo es A.R.P.E.
Por otro lado, causa preocupación que la Junta haya intentado utilizar como fundamento para su decisión el alegado patrón de violaciones existentes en la Urbanización Huyke. Según ha expresado nuestro Tribunal Supremo, toda nueva construcción, mejora o ampliación debe cumplir cabalmente con la reglamentación vigente, independientemente de cuál era la situación de las edificaciones existentes. Mun. de San Juan v. J.C.A., supra, pág. 720.
No intervendremos con las determinaciones de una agencia administrativa a menos que la misma haya actuado de manera arbitraria o ilegal; o de forma tan irrazonable que su actuación constituya un abuso de discreción. Mun. de San Juan v. J.C.A., 149 D.P.R. 263, 280 (1999); Franco v. Dpto. de Educación, 148 D.P.R. *500 703, 709 (1999). Por los fundamentos que acabamos de exponer, entendemos que la determinación de la Junta fue una irrazonable y constituyó un abuso de discreción. Procede su revocación.
A.R.P.E. señala, además, que la Junta erró al otorgar variaciones que no fueron previamente incluidas en la solicitud original. Surge claramente de la resolución de la Junta que las variaciones concedidas por dicha agencia se refieren a las mismas construcciones sobre las que A.R.P.E. pasó juicio. La Junta, a diferencia de A. R.P.E., entendió que se justificaba eximir a la señora Mayo de varias disposiciones reglamentarias.
Nuestro legislador otorgó a la Junta los mismos poderes del funcionario u organismo de cuya actuación se apela. 23 L.P.R.A. sec. 72(c); Junta de Planificación v. J.A.C.L, supra, pág. 218. En el presente caso, la Junta no hizo otra cosa que ejercer esos poderes y revocar una determinación de A.R.P.E. que, a su juicio, consideró incorrecta. 23 L.P.R.A. sec. 72(c).
La resolución de la Junta en muchos aspectos constituye un resumen de los testimonios que ante ella se presentaron. Varios párrafos contenidos en la resolución de la Junta son extremadamente similares a los contenidos en la Exposición Narrativa. En consecuencia, se hace difícil distinguir entre lo que constituye un mero resumen de lo declarado por los testigos y lo que la Junta consideró un hecho probado. A los fines de poder ejercer nuestra función revisora es vital que las resoluciones finales de las agencias administrativas incluyan determinaciones de hechos claras. Véase Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265, 276-277 (1987).
IV
Por los fundamentos antes expuestos, se revoca la resolución de la Junta de Apelaciones sobre Construcciones y Lotificaciones mediante la cual se revocó la determinación de la Administración de Reglamentos y Permisos.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria.
Leda. Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones