Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| WILLIAM DE GRACIA DE LEÓN, SU ESPOSA YESENIA MARTÍNEZ CLAUDIO Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA ENTRE AMBOS | | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina |
| Apelados | KLAN202500205 | Caso número: CA2024CV02575 |
| v. | consolidado con | Sobre: |
| ASOCIACIÓN DE TITULARES LOS EUCALIPTOS, INC.; SR. CARLOS CRUZ, SU ESPOSA FULANA DE TAL Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA ENTRE AMBOS; SRA. MIRELYS MELÉNDEZ, SU ESPOSO FULANO DE TAL Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA ENTRE AMBOS; SRA. KARINNA RANGEL, SU ESPOSO FULANO DE TAL Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA ENTRE AMBOS; ANTHONY JOSEPH, SU ESPOSA FULANA DE TAL Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA ENTRE AMBOS; VILMA I. PEREIRA, SU ESPOSO FULANO DE TAL Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA ENTRE AMBOS; CARLOS LÓPEZ, SU ESPOSA FULANA DE TAL Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA ENTRE AMBOS; ASEGURADORAS A-Z; COMPAÑÍAS AFIANZADORAS A-Z | KLAN202500206 | Sentencia Declaratoria; *Injunction* |
| Apelantes | | |

Panel integrado por su presidenta, la jueza Ortiz Flores, la juez Aldebol Mora y la jueza Boria Vizcarrondo.

## S E N T E N C I A

En San Juan, Puerto Rico, a 4 de septiembre de 2025.

Número Identificador

SEN2025 _____

Comparece la parte apelante, Asociación de Titulares Los Eucaliptos Inc. (Asociación), Vilma Iris Pereira Figueroa, José Manuel Acosta Ojeda, Karinna Rangel Rodríguez Álvez, José Israel Torres Bernabé, Carlos Manuel López Martínez, Luz Eimar Fauré Losada, Carlos Augusto Cruz Soto, Miriam Minell Núñez Irizarry, así como las sociedades legales gananciales compuesta por estos, Mirelys Meléndez Brillón y Anthony Naín Joseph Lynny, mediante dos recursos de apelación con nomenclatura KLAN202500205 y KLAN202500206, posteriormente consolidados y, nos solicita que revoquemos la *Sentencia* emitida y notificada el 28 de febrero de 2025, por el Tribunal de Primera Instancia, Sala Superior de Carolina.[1] Mediante dicho dictamen, el foro primario resolvió que la construcción en la residencia de William De Gracia y Yesenia Martínez Claudio (apelados) no alteró la fachada original.

Por los fundamentos que exponemos a continuación, se confirma el dictamen apelado en ambos recursos.

## I.

El 2 de agosto de 2024, William de Gracia de León y Yesenia Martínez Claudio incoaron una *Demanda* sobre sentencia declaratoria, entredicho provisional e *injunction* preliminar en contra de la parte apelante.[2] Indicaron que, el 8 de febrero de 2024, en el Caso Núm. CN2024CV00024 sobre *injunction*, las partes acordaron que los apelados someterían los planos al Comité de Arquitectura de la Urbanización Los Eucaliptos en Canóvanas (Comité), para su evaluación y aprobación o denegatoria de la construcción de una marquesina y un cuarto en la segunda planta hacia el patio de la residencia de los apelados. Describieron que, luego de someter los planos de las obras al Comité, recibieron una misiva suscrita por personas que no eran parte de este, informando la denegatoria de la

---

[1] Apéndice del recurso, Anejo 4, págs.6-31.
[2] *Íd.*, Anejo 42, págs. 442-534.

obra solicitada. Argumentaron que dicha determinación, así como la comunicación, eran inoficiosas, debido a que las mismas fueron suscritas por personas que no formaban parte del Comité y cuyo envolvimiento resultaba en un conflicto de intereses.

De otro lado, argumentaron que la Escritura Núm. 53 sobre *Constitución de Restricciones de Uso y Edificación* de la Urbanización Los Eucaliptos, suscrita el 1 de agosto de 2006, no contenía servidumbres en equidad (condiciones restrictivas) válidas ni eficaces relativas a la construcción, modificación, remodelación o alteración de las unidades de vivienda.

Arguyeron que dicha escritura pública tampoco les prohibía llevar a cabo su proyecto de construcción, remodelación, alteración o modificación de las unidades de vivienda, mientras que las prohibiciones que contenía no constaban de forma específica en el título de la propiedad en cuestión.

En otros términos, sostuvieron que, el Reglamento General de la Asociación carecía de criterios objetivos para evaluar los cambios que se podían llevar a cabo en las residencias de la Urbanización. Por ende, solicitaron que el TPI le ordenara al Comité que se abstuviera de imponer criterios arbitrarios a la solicitud de construcción presentada por estos. Igualmente, peticionaron que se le ordenara a la Junta de Directores de la Asociación a abstenerse de actuar, participar, evaluar, aplicar y/o considerar la solicitud presentada por estos, al Comité, conforme a lo dispuesto en el Reglamento General de la Asociación. Además, le solicitaron al Tribunal de Primera Instancia que emitiera una sentencia declaratoria en la que declarara que el Reglamento de la Urbanización Los Eucaliptos carecía de criterios específicos que guiaran al Comité en cuanto a la aprobación de las solicitudes de remodelación, construcción o modificación de las unidades residenciales. Asimismo, que se emitiera un *injunction* para que la

apelante cesara de actuar fraudulentamente con relación a la aprobación de su obra.

Por su parte, el 22 de agosto de 2024, la Asociación instó una *Moción de Desestimación de la 'Solicitud de Interdicto Preliminar y Permanente'*, al amparo de la Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2(5).[3] En síntesis, argumentó que la parte apelada no impugnó la validez de las condiciones restrictivas, ni las condiciones restrictivas contenidas en sus cláusulas, incluyendo la obligación de que los titulares mantuvieran la fachada de sus residencias. Alegó que, el Reglamento General de la Urbanización Los Eucaliptos obligaba a los titulares a mantener la fachada original de las propiedades. Sostuvo que, las obras realizadas por los apelados atentaban contra el propósito de las condiciones restrictivas impuestas por el desarrollador de la Urbanización. Adujo que, la falta de probabilidad de prevalecer en el pleito, la falta de cumplimiento con las disposiciones de la escritura de condiciones restrictivas, la falta de diligencia y buena fe por parte de la parte apelada, y el incumplimiento con los requisitos legales y reglamentarios aplicables, eran las razones por las cuales se debía declarar No Ha Lugar la *Demanda* incoada.

El 28 de agosto de 2024, la parte apelante instó una *Oposición a moción de desestimación de la solicitud de interdicto preliminar y permanente.*[4]

Tras diversos incidentes procesales, el 10 de septiembre de 2024, el TPI emitió una *Resolución* en la que declaró No Ha Lugar a la moción de desestimación.[5]

En desacuerdo, el 13 de septiembre de 2024, la apelante acudió ante este Tribunal de Apelaciones mediante la presentación

---

[3] Apéndice del recurso, Anejo 40, págs. 426-438.
[4] *Íd.*, Anejo 39, págs. 404-425.
[5] *Íd.*, Anejo 33, págs. 381-387.

de un Recurso de *certiorari* en la que solicitó que esta Curia revocara la *Resolución* previamente mencionada.[6] Sin embargo, el 30 de septiembre de 2024, emitimos una *Resolución final* en la que este panel resolvió no expedir el auto de *Certiorari,* debido a que el recurso ante nuestra consideración no ameritaba que ejerciéramos nuestra función apelativa.

Así las cosas, el 21 de octubre de 2024, la Asociación de Titulares Los Eucaliptos instó una *Contestación a demanda*.[7] Además, presentó una *Reconvención* en la que le suplicó al Tribunal de Primera Instancia que ordenara a la apelada que desistiera en realizar cualquier obra de construcción que atente contra las condiciones restrictivas.[8]

El 11 de octubre de 2024, el TPI emitió una *Orden* en la que determinó que las partes debían presentar una moción que incluyera: los hechos que no existiera controversia, la descripción de la prueba documental a utilizarse durante el juicio y los testigos.[9]

El 22 de octubre de 2024, las partes radicaron una *Moción Conjunta en cumplimiento de orden sobre estipulación de hechos y documentos*[10] en la que estipularon lo siguiente:

> 1. Los demandantes William De Gracia De León y la Sra. Yesenia Martínez adquirieron mediante compraventa una residencia en la urbanización Los Eucaliptos mediante Escritura de Compraventa Número Treinta (30) otorgada en San Juan, Puerto Rico, el 28 de febrero de 2007, ante el notario público Marguilean Rivera Amill. La dirección física de la propiedad es la siguiente: Los Eucaliptos 16034, Bolt Drive AA 7, Canóvanas, Puerto Rico 00729
> 2. Los datos registrales de la propiedad, según primera inscripción, Segregación y Compraventa, se describen a continuación: --"URBANA: Solar número siete (7) del bloque AA de la urbanización LOS EUCALIPTOS, radicado en el sector Santa Catalina del Barrio Torrecillas del municipio de Canóvanas, Puerto Rico, con una cabida de cuatrocientos catorce metros cuadrados (414.00 m.c.)..."
> ---Consta Inscrita en el Tomo 418, Folio 13, Finca número 17494 de Canóvanas, Registro de la Propiedad, Sección Tercera de Carolina.

---

[6] Apéndice del recurso, Anejo 12, págs. 43-52.
[7] *Íd.*, Anejo 26, págs. 310-346.
[8] *Íd.*, Anejo 26, págs. 338-346.
[9] *Íd.*, Anejo 27, págs. 347-348.
[10] *Íd.*, Anejo 24, págs. 296-308.

3. La Asociación de Titulares Los Eucaliptos Inc. (ASOTLEI), es una corporación sin fines de lucro debidamente registrada en el Departamento de Estado de Puerto Rico.

4. La cláusula novena de la escritura de condiciones restrictivas de la urbanización Los Eucaliptos, dispone en su parte pertinente:

> NUEVE (9). Limitaciones a Cambios o Alteraciones. No se podrá construir, alterar o colocar edificio o estructura alguna que afecte la fachada de las unidades residenciales hasta tanto se cumpla con todos los requisitos aplicables contenidos en el Reglamento de la Asociación, incluyendo la aprobación previa y por escrito del Comité de Arquitectura y los requisitos legales reglamentarios y administrativos aplicables. No obstante lo anterior, a menos que el Comité de Arquitectura apruebe otra cosa, la puerta de entrada principal de las residencias podrá ser reemplazada, sin necesidad de aprobación previa por parte del Comité de Arquitectura, por puertas de madera de su color natural o por puertas de metal de color blanco, en ambos casos de igual o mejor calidad que la de la puerta originalmente instalada por la Desarrolladora. Independientemente de los endosos y permisos gubernamentales y/o de la aprobación por el Comité de Arquitectura, no podrá realizarse ninguna de las actividades mencionadas anteriormente si esta irrazonablemente perjudica, perturba o agrava el uso y disfrute de cualquier otro titular, sea o no un vecino inmediato. Tampoco se permitirá la construcción o ampliación o extensión de lo construido en una residencia, si ella invade u ocupa los patios mínimos (lateral, frente, posterior) establecidos por reglamentos vigentes adoptados por las agencias e instrumentalidades correspondientes."

5. Por su parte, la sección duodécima de la escritura de condiciones restrictivas de la urbanización dispone:

> DOCE (12). Mantenimiento de Fachadas, y Otras Estructuras Análogas. Todo propietario, titular u ocupante de una residencia viene obligado a mantener la fachada y resto del exterior de la misma, incluyendo pero no limitando a la puerta de entrada, la grama y el resto del jardín, y las paredes y ventanas que dan al exterior de su residencia, en el mejor estado de preservación, limpieza y ornato y en estricto cumplimiento con la apariencia y requerimientos estéticos del exterior de toda residencia, según construida o según lo defina o apruebe el Comité de Arquitectura. 6. El artículo 4.08 del Reglamento General de la urbanización Los Eucaliptos dispone: Artículo 4.08 – Comité de Arquitectura Además de las contenidas en la Escritura Matriz, serán de aplicación al Comité de Arquitectura de la Asociación (en adelante denominado el "Comité de Arquitectura" o el "Comité") las siguientes disposiciones: a) Función Composición y Elección – El Comité de Arquitectura es un organismo de la asociación y tendrá lasfacultades expresadas en la Escritura Matriz y en este Reglamento. El Comité estará compuesto por una (1) persona natural o jurídica. b) Término – Salvo en caso de renuncia, destitución o muerte, el miembro del Comité de Arquitectura desempeñara sus funciones hasta que su sucesor sea nombrado por la Junta y tome posición de sus cargos. c) Requisitos del Miembro 1. El miembro del Comité de Arquitectura podrá ser o no Miembro de la Asociación, y podrá también ser o no ser Director de la Asociación.

6. El artículo 4.08 del Reglamento General de la urbanización Los Eucaliptos dispone:

> Artículo 4.08 – Comité de Arquitectura. Además de las contenidas en la Escritura Matriz, serán de aplicación al Comité de Arquitectura de la Asociación (en adelante denominado el "Comité de Arquitectura" o el "Comité") las siguientes disposiciones: a) Función Composición y Elección – El Comité de Arquitectura es un organismo de la asociación y tendrá las facultades expresadas en la Escritura Matriz y en este Reglamento. El Comité estará compuesto por una (1) persona natural o jurídica. b) Término – Salvo en caso de renuncia, destitución o muerte, el miembro del Comité de Arquitectura desempeñara sus funciones hasta que su sucesor sea nombrado por la Junta y tome posición de sus cargos. c) Requisitos del Miembro 1. El miembro del Comité de Arquitectura podrá ser o no Miembro de la Asociación, y podrá también ser o no ser Director de la Asociación.
>
> 2. En caso de que el nominado sea una entidad jurídica, lo representara [sic] en el Comité la persona designada por dicha entidad jurídica.
>
> d) Radicaciones de Solicitudes – Dentro de los treinta (30) días de ser nombrado, el miembro del Comité de Arquitectura notificara por escrito a los Miembros y a la Junta de Directores el lugar en donde deberán radicar las solicitudes correspondientes (Solicitud de Autorización para Modificación de Exterior de Residencia) para la aprobación del Comité. El miembro del Comité de Arquitectura podrá adoptar requisitos en torno a las solicitudes de aprobación, incluyendo el contenido requerido, formatos, etc. De aprobarse por los Miembros y la Junta de Directores, el miembro del Comité de Arquitectura podrá contratar los servicios de arquitectos, ingenieros, arquitectos paisajistas, jardineros, agrimensores, topógrafos y otro personal técnico y abogados que se determine sea necesario para cumplir cabalmente con las responsabilidades del Comité de Arquitectura; y el costo de tal personal será incluido como un gasto en el presupuesto de la Asociación.
>
> e) Renuncia, Destitución o Muerte – Si el cargo del miembro del Comité de Arquitectura quedara vacante por cualquier razón incluyendo renuncia, destitución o muerte, la Junta nombrará un nuevo miembro. El miembro del Comité de Arquitectura podrá renunciar en cualquier momento. La Junta tendrá el derecho de remover en cualquier momento a cualquier miembro del Comité de Arquitectura, con o sin causa, y nombrar su sucesor.
>
> f) Deberes y Poderes 1. El Comité de Arquitectura tendrá a su cargo la aprobación de toda construcción, edificación, alteración, ampliación, colocación de estructuras o cualquier cambio a la fachada o exterior de las Unidades (lo que incluye el respectivo solar), incluyendo pero sin limitarse a la instalación o cambio de rejas, ventanas, puertas, paredes y pintura exterior de las estructuras en cada Unidad, y la construcción de muros, verjas, paisajismo ("landscaping") del patio frontal, piscinas, "jacuzzis","whirlpools", "hot tubs", excavaciones y contenedores de basura.
>
> 2. El Comité de Arquitectura tendrá a su cargo la aprobación de toda construcción, edificación, colocación de estructuras en y alteración y ampliación a, las áreas comunes pertenecientes a la Asociación,

establecidas para el uso y disfrute común de la Urbanización.

3. La aprobación del Comité de Arquitectura será exclusivamente desde el punto de vista estético (pero no el financiero o de costos), considerando la armonía de dicha obra con el resto de la Urbanización, de calidad de trabajo y de materiales.

4. El Comité de Arquitectura podrá requerirle al solicitante, ya sea al Titular o la Junta de Directores, que someta: (a) los permisos necesarios; (b) los planos de construcción y sus especificaciones; y (c) los planos demostrativos de la ubicación y la elevación arquitectónica de la obra; para determinar si aprueba la obra.

5. No obstante lo anterior, el Comité de Arquitectura no será responsable, ni estará obligado a asegurarse de que los Titulares y/o la Asociación cumplan con las normas, reglamentos y/o requisititos [sic]de las agencias gubernamentales federales y/o estatales al llevar a cabo cualquier mejora o ampliación aprobada por dicho Comité, de lo que será responsable el Titular y las agencias concernidas.

6. El comité de Arquitectura deberá emitir su decisión par escrito, en un término de sesenta (60) días computados a partir de la fecha en que se radique debida y completamente la solicitud y l[o]s demás documentos, materiales e información que requiera el Comité.

7. Antes de comenzar una obra el Titular tendrá que hacer los correspondientes estudios del subsuelo, obtener las permisos y endosos y cumplir con los requisitos pertinentes de la Administración de Reglamentos y Permisos (ARPE), la Junta de Planificación de Puerto Rico, y de cualquier otra agencia gubernamental con injerencia en el asunto.

g) Realización de Obras

1. De aprobarse una solicitud las obras, además de realizarse en cumplimiento con los términos y los documentos complementarios (planos, diseños, dibujos y especificaciones) aprobados por el comité, se deberán iniciar dentro de las seis (6) meses siguientes a la aprobación (ya sea mediante acción afirmativa o par falta de acción del comité de la solicitud; y deberán estar sustancialmente completa[da]s dentro del periodo de doce (12) meses siguientes a la aprobación de la solicitud, o dentro de aquel periodo más largo que sea especificado en la aprobación.

2. En la eventualidad de que las obras no se comiencen dentro del periodo expresado arriba, entonces la aprobación de la obra se considerará expirada y sin efecto, y del Titular continuar interesado en llevar a cabo la obra, tendrá que cumplir de nuevo con los requisitos pertinentes de la Escritura Matriz y este Reglamento.

3. No se podrá realizar ninguna desviación de lo autorizado en la aprobación de la obra emitida par el comité, sin el previo consentimiento por escrito del comité.

4. La aprobación de cualquier obra, plano, diseño, dibujo o especificación no se interpretará como una renuncia del derecho del Comité de rechazar dicha obra, plano, diseño, dibujo o especificación en la eventualidad de que dicha obra, plano, diseño, dibujo o especificación sea subsiguientemente sometida para aprobación en otro momento u otra obra.

h) Reglas

1. La Asociación podrá de tiempo en tiempo adoptar, enmendar y derogar reglas referentes a la radicación, forma y el contenido de solicitudes, planos, diseños, dibujos o especificaciones a sometérsele para consideración del comité; y podrá publicar las declaraciones de políticas, estándares y guías que estime necesario o conveniente. Ninguna regla, reglamento, criterio o declaración similar se interpretará coma una renuncia de las disposiciones de la Escritura Matriz o de este Reglamento.

2. La Asociación podrá imponer y cobrar al Titular solicitante, además del recobro de los desembolsos en que deba o convenga incurrir para evaluar adecuadamente la solicitud (tales como arquitectos, ingenieros, arquitectos paisajistas, jardineros, agrimensores, topógrafos y otro personal técnico y abogados), una tarifa razonable para la radicación de cualquier solicitud sometida para la evaluación del comité bajo las disposiciones de la Escritura Matriz y/o de este Reglamento. Hasta tanto el Comité decida otra cosa, la tarifa será setenta y cinco dólares ($75) por cada solicitud.

7. Mediante sentencia por estipulación dictada el 8 de febrero de 2024 en el caso Asociación de Titulares Los Eucaliptos Inc. v. William De Gracia De León y Otros, CN2024CV00024, el Tribunal aprobó lo siguiente:

1. Los demandados se allanan a que se dicte una orden para paralizar todas las obras de construcción que son objeto de la demanda de autos.

2. Los demandados tendrán 10 días contados a partir de la notificación de esta sentencia para entregar al Comité de Arquitectura de la urbanización Los Eucaliptos los planos de las obras que se paralizan al amparo de este acuerdo.

3. El Comité de Arquitectura de la urbanización Los Eucaliptos tendrá el término dispuesto en el Reglamento General de la Asociación de Titulares Los Eucaliptos, Inc. para aprobar o rechazar las obras propuestas. En ausencia de un término reglamentario para atender la solicitud de los demandados dicho comité tendrá 30 días contados a partir de la fecha en que se le entreguen los planos antes mencionados para emitir una determinación al respecto.

4. La parte demandante reconoce el derecho de los demandados de solicitar revisión judicial de la determinación que tome el Comité de Arquitectura de la urbanización. De acuerdo con las alegaciones 4 y 7 de la demanda las obras objeto de ésta se describen de la siguiente manera: "esta causa de acción se radica contra los demandados por razón de la construcción de unas paredes de bloques y de hormigón para cerrar áreas, y cambiar la fachada en la propiedad antes descrita..." obtenerse una sentencia judicial en un pleito independiente al de autos que advenga final y firme determinando que las obras propuestas no cumplen las condiciones restrictivas a las que están sometidos los inmuebles en dicha urbanización los demandados se obligan a demoler las obras construidas hasta el momento a su entero costo y restaurar la fachada del inmueble a su estado original. Los demandados tendrán 60 días contados a partir de que dicha sentencia haya advenido final y firme para completar la demolición de las obras en controversia.

5. De obtenerse una sentencia judicial en un pleito independiente al de autos que advenga final y firme

que apruebe la construcción de las obras propuestas, los demandados se obligan a mantener paralizadas las obras de construcción hasta que obtengan los permisos gubernamentales requeridos por ley.

6. La paralización de las obras ordenada en esta sentencia estará vigentes hasta que se cumplan los términos y las condiciones de este acuerdo.

7. El incumplimiento de la orden de paralización de obras contenida en esta sentencia conllevará la imposición de una sanción de $1,000 diarios por cada día de incumplimiento. Esto sujeto a la realización de las correspondientes vistas evidenciarias necesarias para determinar si efectivamente dicha orden se incumplió.

8. La parte demandante se allana a que la parte demandada complete la construcción de la piscina y del gazebo que actualmente se construyen en el inmueble descrito y que cuentan con los permisos gubernamentales requeridos por ley. Las partes reconocen que la construcción de la piscina y del gazebo no están contenidas en las alegaciones de la demanda de autos y están excluidas de la orden de paralización contenida en esta Sentencia.

Igualmente, las partes describieron la prueba documental y los testigos que estarían testificando durante el juicio.

Luego, el 14 de noviembre de 2024, Vilma Iris Pereira Figueroa, José Manuel Acosta Ojeda, Karinna Rangel Rodríguez Álvez, José Israel Torres Bernabé, Carlos Manuel López Martínez, Luz, Eimar Fauré Losada, Carlos Augusto Cruz Soto, Miriam Minell Núñez Irizarry, así como las sociedades legales gananciales compuesta por estos, Mirelys Meléndez Brillón y Anthony Naín Joseph Lynny presentaron una *Contestación a Demanda*.[11] Además, instaron una *Reconvención* en la que insistieron en que el foro primario debía desestimar la *Demanda*.[12] Asimismo, solicitaron que se ordenara la demolición de la construcción en controversia.

Tras diversos trámites procesales, los días 20, 22 y 24 de enero de 2025, se celebró la vista de interdicto ante el Tribunal de Primera Instancia. En esta se presentó el testimonio de la parte apelada, el perito Ing. Carlos X. Rodríguez Ríos y la Ing. Vilma

---

[11] Apéndice del recurso, Anejo 19, págs. 219-262.
[12] *Íd.*, págs. 253-262.

Pereira en lo que concierne a la construcción en controversia y, si esta fue en contravención de la servidumbre en equidad.[13]

Finalmente, el 28 de febrero de 2025, el TPI emitió una *Sentencia*[14] en la que formuló las siguientes determinaciones de hechos:

> 1. Los demandantes William De Gracia De León, Yesenia Martínez Claudio, son mayores de edad, conviven hace más de 25 años, y son residentes y propietarios de la propiedad ubicada en Los Eucaliptos 16034, Bolt Drive AA 7, Canóvanas.
> 2. A raíz de una sentencia dictada en el caso CN2024CV00024, los demandantes y el co-demandado Asociación De Titulares Los Eucaliptos, Inc., acordaron en lo pertinente, que los demandantes se allanaron a que se dictara una orden para paralizar la construcción de una marquesina y cuarto ubicado en la segunda planta que da hacia el patio de su residencia. Como cuestión de hechos, la construcción sigue paralizada.
> 3. Las partes también acordaron, que los demandantes entregarían a un Comité de Arquitectura de la urbanización Los Eucaliptos, los planos de las obras paralizadas, para que aprobara o denegara la construcción de una marquesina y cuarto en segunda planta hacia el patio en la residencia
> 4. El 19 de febrero de 2024 y según acordado, la parte demandante notificó a la parte demanda[da] los planos de las obras a construirse. A dicho momento, el codemandado Asociación De Titulares Los Eucaliptos, Inc., no le había notificado al demandante quien era la persona que componía el Comité de Arquitectura.
> 5. El 28 de marzo de 2024, mediante una comunicación suscrita por los codemandados Carlos Cruz, Mirelys Meléndez, Karinna Rangel, Anthony Joseph, Vilma I. Pereira y Carlos López, notificaron a los demandantes que habían determinado no aprobar las obras. De dicha determinación no surge quién fue el miembro del Comité de Arquitectura que evaluó los planos sometidos y que realizó la determinación de no aprobar los planos sometidos por los demandantes.
> 6. Según la comunicación antes mencionada, la razón para denegar el plano sometido era que: 1. Las paredes exteriores de ambos niveles no se mantienen continuas y uniformes. La construcción propuesta debe mantener la arquitectura ortogonal, 2. Los ventanales, frontales, laterales y/o traseros, no mantiene el mismo lenguaje de las fachadas originales, 3. La construcción no parece continuar el alero ancho atrevés [sic] de la parte alta, 4. La construcción no mantiene una distancia prudente entre verjas perimetrales, es decir, de ninguna manera puede la edificación propuesta extenderse hasta el punto de colindancia. En los puntos de colindancia solo están permitidas las verjas a la altura permitida bajo el Código de Construcción de Puerto Rico.
> 7. No empece a la denegatoria, los demandados expresaron en dicha comunicación que, para hacer una recomendación favorable, el Titular debe presentar: 1. Planos actualizados que incluyan vistas frontal, lateral y trasera renderizadas de la fachada propuesta, corrigiendo los puntos mencionados anteriormente. 2. Los planos actualizados deben también

---

[13] Alegato Suplementario.
[14] *Íd.*, Anejo 4, págs. 6-31.

indicar la distancia entre la pared exterior de la edificación propuesta hasta la verja de colindancia.

8. De la prueba admitida en evidencia, surge que, mediante comunicación de 28 de abril de 2024, el ingeniero Carlos X. Rodríguez Ríos, en representación de los demandantes, cumplió con lo requerido en la comunicación de 28 de marzo de 2024, suscrita por los codemandados. En dicha comunicación, el ingeniero Rodríguez expresó que el proyecto cumple con lo solicitado toda vez que la obra sigue la arquitectura ortogonal, cumple con la continuidad de fachada incluyendo ancho de alero y los colores. En la referida comunicación, se incluyó un plano con la distancia entre la marquesina localizada en el patio lateral izquierdo y verja del colindante. En lo que corresponde al punto sobre la distancia de verja con la estructura de marquesina, se informó que este asunto corresponde a la Junta Adjudicativa de la Oficina de Gerencia de Permisos conforme a la Ley 161-2009, según enmendada, determinar su aprobación o denegación. Además, se informó que no debe haber objeción sobre este asunto toda vez que el colindante inmediato no posee reparos de la construcción y que es una condición prevaleciente de varias estructuras de la urbanización Los Eucaliptos.

9. Mediante comunicación suscrita el 14 de mayo de 2024, por los codemandados, el Sr. Emmanuel Rivera, administrador de la urbanización, notificó a los demandantes su determinación de denegar la autorización, esta vez alegando que: la propuesta de ampliación altera significativamente la fachada de las unidades residenciales al construirse una segunda planta sobre la marquesina de la unidad de vivienda. Esta modificación no se ajusta a las normas establecidas en la normativa de la comunidad y afectaría negativamente la estética y el equilibrio visual del conjunto residencial.

10. La prueba apreciada por el Tribunal estableció que, sin el endoso o permiso de la Asociación de Titulares Los Eucaliptos, Inc., los demandantes están impedido[s] de acudir a la Oficina de Gerencia de Permisos a solicitar el permiso de construcción, según lo requiere la Ley 161-2009.

11. El Ingeniero Carlos Rodríguez Ríos es un Ingeniero debidamente autorizado a ejercer la profesión, con más de veintiséis (26) años de experiencia en el área de construcción. Desde el año 2016 al presente, el Ing. Rodríguez Ríos ha estado a cargo del Departamento de Permisos Urbanísticos del Municipio Autónomo de Carolina. Dicho Departamento está compuesto por cinco (5) filiales u Oficina, como la Oficina de Revisión Técnica, la Oficina de Servicios Especiales (Legal Oficina), Oficina del Cuerpo de Cumplimiento y Oficina de Eliminación Pública de Gravámenes. [el principal] *sic.*

12. Como parte de sus funciones, el Ingeniero Carlos Rodríguez Ríos[,] previo a conceder o denegar permisos, procesa y evalúa toda la documentación relacionada con los diversos Permisos de Construcción para todo tipo de empresas y negocios, así como para la construcción residencial o comercial en la jurisdicción de Carolina. Además, está a cargo de supervisar el cumplimiento de las leyes y reglamentos que rigen el desarrollo de terrenos, la construcción de edificios y estructuras, así como su uso.

13. La prueba apreciada estableció que, el Ingeniero Carlos Rodríguez Ríos inspeccionó la propiedad y evaluó toda la información relacionada a la propuesta del proyecto para la construcción de una marquesina y un cuarto en la segunda planta hacia el patio lateral izquierdo de la residencia de los demandantes.

14. La prueba creíble y apreciada por el Tribunal estableció, a base del testimonio vertido en Sala por el Ingeniero Carlos Rodríguez Ríos, a quien el Tribunal le da total deferencia y credibilidad, que el plano y las vistas de la marquesina y segunda planta, presentan esquinas con sus ángulos rectos, creando el sentido de las líneas verticales y/o horizontales con líneas perpendiculares en continuidad con la arquitectura original. Además, la vista de fachada Principal (Vista Patio Delantero), mantiene y mantendrá la continuidad en su figura geométrica consistente a la estructura original haciendo el balance necesario con la forma geométrica semicircular en [el] Patio Lateral Derecho.

15. En cuanto a la fachada posterior, la prueba creíble y apreciada por el Tribunal estableció que, las puertas y ventanas propuestas para la construcción final, mantendrán las especificaciones de la estructura original y solicitada por la parte demandada, o sea las de tipo Old San Juan, en marco de aluminio color blanco, manteniendo a su vez la carta de colores representativos de la urbanización.

16. La prueba creíble y apreciada por el Tribunal estableció que, la sugerencia de la parte demandada para que los demandantes instalen unas ventanas Tipo Old San Juan en el segundo nivel propuesto conllevaría una violación al Código Civil de Puerto Rico [Ley 55-2020] en su Artículo 807- Distancia para abrir ventanas, con vistas rectas y balcones. El artículo en referencia establece que no se pueden abrir venta[na]s con vistas rectas sobre el predio del vecino a una distancia de 1.5 metros (equivalente a 5 pies lineales), por lo que es correcta la determinación de la parte demandante, de no instalar ventanas en la parte trasera de la construcción. La instalación de ventana en segundo nivel hacia el patio lateral izquierdo (Este), la cual tiene la intención de entrada de iluminación en marco blanco en aluminio y cristal tipo escarchado "frosted", este detalle no implica la violación al artículo en referencia, ya que siendo escarchado evitar[í]a la vista recta hacia el predio del colindante inmediato.

17. En lo que respecta a la distancia prudente entre la verja al espacio del lateral izquierdo entre la verja perimetral y la marquesina entre ambas estructuras existe un espacio de 7 ¾ de pulgadas, la cual se mantiene desde [el] patio delantero hacia [el] patio posterior. A base de la opinión pericial del Ing. Carlos Rodríguez Ríos, la cual este Tribunal coincide, corresponde a la Junta Adjudicativa de la Oficina de Gerencia de Permisos conforme a la Ley 161-2009, según enmendada y no a la parte demandada determinar, si el espacio lateral izquierdo entre la verja perimetral y la marquesina entre ambas estructuras cumple con los parámetros de construcción del Reglamento Conjunto Para La Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios (RC) conforme a la Ley 161-2009, según enmendada.

18. La Sra. Vivian Pereira Figueroa es una Ingeniera Eléctrica licenciada, que labora para una firma privada. En la misma está a cargo de un grupo de diseño.

19. La Ingeniera Pereira Figueroa es miembro de la Asociación de Titulares Los Eucaliptos, Inc., y del Comité de Arquitectura de la Urbanización Los Eucaliptos.

20. La prueba apreciada por el Tribunal estableció que Pereira Figueroa denegó erróneamente la solicitud de endoso de la parte demandante, a base de una evaluación de los planos sometidos, comparándolo con unas fotos de la construcción paralizada y sin tomar en consideración que la misma no estaba culminada y sin proyectar cómo quedaría la obra se construyera conforme a los planos sometidos. *sic*[15]

---

[15] Apéndice del recurso, Anejo 4, págs. 16-20.

El *foro a quo* resolvió que la construcción en el hogar de la apelada no alteró la fachada original de la propiedad. Ello, pues, le dio total credibilidad y deferencia al testimonio del Ing. Carlos Rodríguez Ríos. El testigo razonó, durante su testimonio que, "el plano y las vistas de la marquesina y segunda planta, presentan esquinas con sus ángulos rectos, creando el sentido de las líneas verticales y/o horizontales con líneas perpendiculares en continuidad con la arquitectura original. Además, la vista de fachada Principal (Vista Patio Delantero), mantiene y mantendrá la continuidad en su figura geométrica consistente a la estructura original haciendo el balance necesario con la forma geométrica semicircular en Patio Lateral Derecho".

Así pues, el foro primario determinó que la construcción y los planos presentados por la parte apelada ante el Comité, cumplen con los requisitos de construcción establecidos por dicho comité. Resolvió que, la parte apelante no presentó, con prueba creíble y admisible, cómo la construcción alteró la fachada. Asimismo, decretó que carecía de jurisdicción para atender la controversia relacionada a la distancia entre la verja y la construcción, pues le corresponde a la Oficina de Gerencia y Permisos (OGPE) atender dicho asunto. El TPI aclaró que, su jurisdicción se limitaba en atender si la construcción alteró la fachada.

En resumen, el Tribunal de Primera Instancia desestimó la reconvención presentada por la parte apelante y declaró Ha Lugar la demanda. En consecuencia, declaró que los planos de la obra y la construcción propuesta por los apelados no altera la fachada de las estructuras residenciales de la urbanización. Por tanto, ordenó que la Asociación expidiera el endoso de la construcción para que la parte apelada acudiera ante la OGPE y así, poder legalizar la obra de construcción.

Inconforme, el 11 de marzo de 2025, la *Asociación de Titulares* compareció ante nos mediante la presentación de una *Apelación* con nomenclatura KLAN202500205. Por otro lado, el día 12 del mismo mes y año, Vilma Iris Pereira Figueroa, José Manuel Acosta Ojeda, Karinna Rangel Rodríguez Álvez, José Israel Torres Bernabé, Carlos Manuel López Martínez, Luz Eimar Fauré Losada, Carlos Augusto Cruz Soto, Miriam Minell Núñez Irizarry, así como las sociedades legales gananciales compuesta por estos, Mirelys Meléndez Brillón y Anthony Naín Joseph Lynny presentaron un recurso de *Apelación* con nomenclatura KLAN202500206. La parte apelante formuló el siguiente señalamiento de error en ambos recursos:

> Erró el Tribunal de Primera Instancia al declarar Ha Lugar la demanda y desestimar la reconvención, ya que la parte apelante actuó correctamente al negar la aprobación de una obra que no cumple con las condiciones restrictivas ni con la reglamentación vigente de la OGPE y de la Junta de Planificación.

La parte apelada presentó una *Oposición a recurso de apelación* el 12 de junio de 2025.

Con el beneficio de la comparecencia de las partes, y evaluada la *Transcripción de Prueba Oral*, procedemos a resolver.

**II.**

**A.**

Sabido es que este Tribunal Apelativo actúa, esencialmente, como foro revisor. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Es por ello que, nuestra encomienda principal es examinar cómo los tribunales inferiores aplican el Derecho a los hechos particulares de cada caso. *Íd.* Cónsono con lo anterior, el desempeño de nuestra función revisora se fundamenta en que el Tribunal de Primera Instancia desarrolle un expediente completo que incluya los hechos que haya determinado ciertos a partir de la prueba que se le presentó. *Íd.* Es decir, nuestra función de aplicar y pautar el Derecho requiere saber cuáles son los hechos, tarea que

corresponde, primeramente, al foro de instancia. *Íd.* Como foro apelativo, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos. *Íd.* Esa es la función de los tribunales de primera instancia. *Íd.*

Por el contrario, al momento de analizar prueba documental, prueba pericial o testimonios de testigos ofrecidos mediante declaraciones escritas, estamos en la misma posición que el Tribunal de Primera Instancia. *Ortiz et al. v. S.L.G. Meaux,* 156 DPR 488, 495 (2002). Así, "el Tribunal Apelativo tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta". *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021), citando a *González Hernández v. González Hernández,* 181 DPR 746, 777 (2011). Asimismo, es norma básica que las conclusiones de derecho son revisables en su totalidad por el foro apelativo. *Dávila Nieves v. Meléndez Marín,* supra, pág. 770. Ahora bien, como norma general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los tribunales inferiores, así como su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en la sala. *Íd.,* pág. 771.

En nuestro ordenamiento jurídico no se favorece la intervención de los foros apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Sucn. Mena Pamias et al. v. Meléndez et al.*, 212 DPR 758 (2023); *Pueblo v. Hernández Doble*, 210 DPR 850 (2022); *Santiago Ortiz v. Real Legacy et al.*, supra. Ello, debido a que el foro de instancia está en mejor

posición que un tribunal apelativo para llevar a cabo esta importante tarea judicial. *Dávila Nieves v. Meléndez Marín*, supra, pág. 771.

En consideración a la norma de corrección que cobija a las determinaciones realizadas por el Tribunal de Primera Instancia, cuando una parte peticionaria señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que esta ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario. Ello se logra utilizando alguno de los mecanismos de recopilación de prueba oral, como lo son: (1) transcripción de la prueba, (2) exposición estipulada o (3) exposición narrativa. *Pueblo v. Pérez Delgado*, 211 DPR 654 (2023). Los tribunales de mayor jerarquía no pueden cumplir a cabalidad su función revisora sin que se le produzca, mediante alguno de estos mecanismos, la prueba que tuvo ante sí el foro primario. *Íd.*

Sobre ese particular, nuestro Tribunal Supremo ha reiterado que las disposiciones reglamentarias que gobiernan los recursos que se presentan ante el Tribunal de Apelaciones deben observarse rigurosamente. *Pueblo v. Pérez Delgado*, supra. Véase, *Hernández Maldonado v. Taco Maker*, 181 DPR 281 (2011). De esa manera, los abogados y las abogadas tienen la obligación de cumplir fielmente con el trámite prescrito en las leyes y en los reglamentos aplicables para el perfeccionamiento de los recursos. *Íd.* No puede quedar al arbitrio de la representación legal decidir qué disposiciones reglamentarias aplican y cuándo. *Íd.* Por tanto, es tarea de la parte peticionaria presentar al foro revisor la prueba oral bajo la que se pretende impugnar las determinaciones del foro *a quo*. *Íd.*

**B.**

La servidumbre en equidad, conocida como condiciones restrictivas, consiste en varias restricciones y condiciones que limitan el uso de los terrenos, operan en beneficio de los presentes

y futuros propietarios. *Residentes Parkville v. Díaz*, 159 DPR 374, 382 (2003). Es reconocido que las cláusulas restrictivas que gravan las urbanizaciones residenciales tienen como finalidad preservar, "la belleza, la comodidad y la seguridad del reparto residencial" al limitar las facultades de los nuevos adquirientes de solares y viviendas en cuanto a hacer obras nuevas, efectuar cambios en las propiedades existentes y delimitar el uso a los que se puede destinar una propiedad. *Residentes Parkville v. Díaz*, supra, pág. 384. Para que la servidumbre en equidad sea válida, se requiere que sean razonables, que se establezcan como parte de un plan general de mejoras, que consten de forma específica en el título de la propiedad y que se inscriban en el Registro de la Propiedad. *Lawton v. Rodríguez Rivera*, 35 DPR 487 (1926); *Residentes Parkville v. Díaz*, supra, pág. 383.

Los dueños de los predios pueden hacer valer las condiciones de una servidumbre en equidad mediante la interposición de un *injunction. Asoc. V. Villa Caparra v. Iglesia Católica*, 117 DPR 346, 353-354 (1986). Contra tal recurso, un demandado puede oponer todas las defensas que le otorguen los principios de equidad: (1) consentimiento (*acquiescence*); (2) conciencia impura (*unclean hands*); (3) incuria (*laches*); (4) impedimento (*estoppel*). *Íd.*

Una vez se reconoce la vigencia de las servidumbres en equidad, los tribunales deben cumplir a cabalidad los propósitos del acuerdo al que las partes aceptaron someterse al adquirir la propiedad gravada, salvo sea contraria a la ley, la moral o el orden público. *Glines et al. v. Matta et al.*, 19 DPR 409 (1913); *Residentes Parkville v. Díaz*, supra, pág. 386.

### III.

En su único señalamiento de error, la parte apelante argumentó que, el Tribunal de Primera Instancia no debió resolver en favor de la apelada toda vez que la construcción es contraria a la

reglamentación de la Urbanización Los Eucaliptos, la OGPE y la Junta de Planificación.

Nuestro ordenamiento jurídico ha resuelto que, este Tribunal de Apelaciones está en la misma posición que el Tribunal de Primera Instancia al momento de dirimir los hechos que dieron lugar a la controversia del caso. No obstante, no es favorable la intervención de esta Curia para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia, en <u>ausencia de pasión, prejuicio, parcialidad o error manifiesto</u>. Ello, pues el foro primario evalúo la prueba desfilada ante su consideración y está en mejor posición que este Tribunal en cuanto a la apreciación de la prueba.

Tras un examen minucioso del expediente, resolvemos que no intervendremos en las determinaciones de hechos esbozadas por el Tribunal de Primera Instancia dado que no se configuran las circunstancias previamente descritas que nos autorizan a intervenir en las determinaciones de hechos. Surge de la transcripción de la prueba oral que, la apelada construyó un cuarto en el segundo nivel de su residencia y una marquesina. Sin embargo, aquilatada la prueba ante sí, el foro juzgador le dio entera credibilidad al testimonio presentado por la parte apelada y resolvió que la construcción no alteró la fachada original de la residencia. Por tanto, no fue contraria a las condiciones restrictivas. Además, la parte apelante no trajo a nuestra atención alguna prueba que nos persuadiera a resolver en contra del *foro a quo*.

Concurrimos con el Tribunal de Primera Instancia en que los Tribunales tenemos jurisdicción para hacer valer las condiciones impuestas que constituyen las servidumbres de equidad. Atisbamos también que, el Tribunal no es el foro idóneo para atender las

controversias relacionadas con la permisología de las construcciones.

Con ello, reiteramos nuestra postura en brindarle deferencia a las determinaciones de hechos formuladas por el TPI debido a que se realizaron en ausencia de pasión, prejuicio, parcialidad o error manifiesto. Consecuentemente, el Tribunal de Primera Instancia no erró en resolver que la apelada no alteró la fachada.

**IV.**

Por los fundamentos que anteceden, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones